482 So.2d 802 (1986)
John ARMAND, Individually and on Behalf of His Interdicted Daughter, Joni I. Armand
v.
LOUISIANA POWER & LIGHT COMPANY and Jefferson Parish Department of Roads & Bridges.
No. CA-2337.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1986.
Writ Denied March 21, 1986.
Carey D. Bearden, Leonard A. Radlauer, New Orleans, and Wilson M. Montero, Jr., Metairie, for plaintiffs-appellees.
Andrew P. Carter and George F. Riess, Monroe & Lemann, New Orleans, for defendants-appellants.
*803 Before SCHOTT, BARRY, BYRNES, WARD and WILLIAMS, JJ.
BARRY, Judge.
This tragic one-car accident presents two issues: whether the defendant utility company was negligent because its transmission pole was too close to a roadway, and if the pole's design caused the severe injuries.
Joni Armand, a 20 year old waitress, got off work at 11 p.m. She and her boyfriend, John Kelly, went to a party in LaPlace for three hours, drinking and playing pool. They drove back to Metairie for breakfast, but argued in the restaurant's parking lot. John loaned his car to Joni (a new Toyota) to go home. Instead, she went to a bar in Fat City, arrived about 4 a.m. and met Wayne Clouatre. They talked briefly then Joni left for a West End bar and Wayne followed. There was conflicting testimony that Joni drove between 35-50 mph (35 mph speed limit) in a misting rain on a wet and dark West Esplanade Ave.
Wayne said a car approached from the opposite direction on the two lane street and Joni "got over" to the right. Up to that point Wayne said Joni's driving appeared normal. The Toyota slid to the left, then right and went into a spin. The car jumped a 5½"-6" curb, slammed sideways into a La. Power & Light Co. pole, and was demolished. The pole was 29"-30" from the curb on the grassy elevated border of a wide, open drainage canal. The car's front wheels stopped a few feet from the canal's sloping embankment.
Joni was taken to East Jefferson Hospital and blood drawn at 6:00 a.m. revealed.30% alcohol content. A crime lab sample taken at 6:50 a.m. showed .23% alcohol content. Joni suffered severe injuries, is a quadriplegic and was interdicted.
John Armand, individually and on his daughter Joni's behalf, sued LP & L and the Jefferson Parish Dept. of Roads and Bridges. Prior to trial plaintiff settled for $20,000 with the parish and its third party defendants, the car owner and his insurer and all were dismissed. Plaintiff waived a strict liability claim, and LP & L did not argue its right to have any recovery reduced in proportion to the percentage of fault (if any) assigned to the parish. The jury found plaintiff 20% negligent and LP & L 80% negligent for the design, installation, location and maintenance of the pole. The $1.5 million award was reduced to $1.2 million. The parish is insulated against any claim for contribution.
LP & L contends the law and evidence does not support the jury's findings of causation, negligence, apportionment of fault and quantum. We conclude the location and design of LP & L's pole was not a cause-in-fact of plaintiff's injuries and reverse the judgment.
LP & L's pole is one of a series of steel towers carrying transmission lines. The towers were erected in 1961 by LP & L before West Esplanade was upgraded several years later to a collector road. Both sides presented experts who said there are no industrial or governmental standards of safety for construction or placement of utility structures beside roads. All agreed LP & L could have relocated, reshaped or shielded the pole, but differed as to the feasibility and efficiency of possible safety measures.
In order for LP & L's conduct to be considered the legal cause of Joni's injuries, it's conduct must be a cause-in-fact of the injuries. The risk and harm encountered by a plaintiff must fall within the scope of protection afforded by a defendant's duty which was breached by its negligence. Dartez v. City of Sulphur, 179 So.2d 482 (La.App. 3rd Cir.1965). See generally McNamara, The Duties and Risks of the Duty-Risk Analysis, 44 LA.L.REV. 1227 (1984). Negligent conduct is a cause-in-fact of harm to another if it is considered a substantial factor in bringing about the harm. Thomas v. Missouri Pacific Railroad Company, 466 So.2d 1280 (La.1985).
The cause must play a significant role in causing the injury. Lastrapes v. South Central Bell Telephone Company, 473 So.2d 115 (La.App. 3rd Cir.1985); Carter v. *804 Dr. Pepper Bottling Company, 470 So.2d 496 (La.App. 1st Cir.1985). One must speculate as to what would have happened if the conduct in question had not taken place. Since this requires surmise, probabilities necessarily come into play. If the victim probably would not have encountered the harm but for the defendant's conduct, the conduct can be considered a cause-in-fact. See generally, Malone, Ruminations on Dixie Drive It Yourself v. American Beverage Company, 30 LA.L. REV. 363 (1970).
The location of the pole did not create an unreasonable risk of harm. To so hold would create absolute liability. We are cognizant of the inestimable number of poles and trees which line our streets, many next to or a few inches off the roadways. LP & L's pole is no more a legal cause of Joni's injuries than if she had hit an object in the road, lost control, then struck the pole. The pole's location in the elevated, parish approved, designated right of way was not a cause-in-fact of the accident, nor was it a substantial contributing factor. A utility company has no obligation to guard against rare exigencies such as an out of control vehicle leaving a traveled roadway.
Plaintiff claims the pole's size and square design (instead of round) caused the crushing type injuries. It is purely speculative whether a guard rail on such a pole would have resulted in less severe injuries.
Plaintiff's reliance on Lang v. Prince, 447 So.2d 1112 (La.App. 1st Cir.1984), writ denied 450 So.2d 1309, 1311 (La.1984), is misplaced. There liability was predicated on the utility pole's location in the middle of an improved shoulder.
It is obvious a serious accident would have occurred whether or not the pole was 29 inches from the road. Joni's reckless driving on the slippery roadway caused her to lose control of the car, but her intoxication either precipitated the initial slide or prevented her from regaining control. Joni's blood alcohol content, whether .30% or .23%, does not create a presumption of intoxication because the La.R.S. 32:662 presumption applies only in criminal cases. Nevertheless, all experts agreed that .30% or .23% would impair the motor abilities and judgment of anyone. Such an inordinately high alcohol content could have induced sleep, but certainly impacted Joni's normal senses to react. According to the experts, if the car had not hit the pole it would have gone into the canal. Joni would have drowned or been severely injured.
A motorist has a duty to control an automobile and to maintain a proper lookout. Russo v. Guillory, 322 So.2d 233 (La.App. 4th Cir.1975) writ denied, 325 So.2d 608 (La.1976); Hebert v. Lefty's Moving Service, 389 So.2d 855 (La.App. 4th Cir.1980). The accident was avoidable even if Joni was sober and maintained control, but her negligence breached this duty and was the sole cause of the accident.
The location and design of defendant's transmission pole was not the cause-in-fact of the accident. To hold otherwise was clearly wrong.
The trial court judgment is reversed. There is judgment in favor of defendant, Louisiana Power and Light Company, and against plaintiff, John Armand, dismissing his suit at his cost.
REVERSED.
BARRY, J., joins in the majority.
WARD, J., dissents.
BYRNES, J., joins in WARD, J., dissent.
BARRY, Judge, joins the majority:
The LP & L structure was not on a shoulder. The cases cited by the dissent involve an area designated for vehicles to voluntarily drive onto when leaving a primary roadway.
LP & L's structure was on an approved right-of-wayabove an elevated curb and access to that area required the driver to jump the curb. To get onto any shoulder only requires voluntarily driving to that area which is designed for vehicular traffic.
*805 WARD, Judge, dissenting.
I respectfully dissent because I believe the majority incorrectly applies the duty-risk tort analysis and reaches the wrong result.
The finding that Louisiana Power and Light Company's utility tower was not a cause-in-fact of Joni Armand's injury distorts the nature and role of causation-in-fact in duty-risk analysis. The majority opinion conveys mistrust of both the duty-risk analysis and the doctrine of comparative fault and deprives the parties of a meaningful review of the true issues. Out of a fear of the specter of "absolute liability", the majority has effectively reinstated the doctrine of contributory negligence in this case.
I submit that the majority opinion correctly begins its analysis by examining the issue of causation-in-fact. In a duty risk analysis, if there is no cause-in-fact, the inquiry should end. But the majority confuses matters by interjecting policy and liability concerns which should be considered only in subsequent steps in the duty-risk analysissteps which the majority analysis should never reach because it fails to find causation-in-fact. See McNamara, The Duties and Risks of the Duty-Risk Analysis, 44 La.L.Rev. 1227, 1230 (1984), quoting Green, The Causal Relation Issue in Negligence Law, 60 Mich.L. Rev. 543, 549 (1962).
I believe that the majority begins by asking the right questions: whether LP & L's conduct was a substantial factor or played a significant role in causing plaintiff's injury and whether the plaintiff would have suffered some harm but for LP & L's conduct. Rather than answer these inquiriesand I believe anything but an affirmative answer is ludicrousthe majority responds with the analytical non sequitur: "The location of the pole did not create an unreasonable risk of harm." The reasonableness of a particular risk is a step in determining the existence and scope of a legal dutyit is not part of the cause-in-fact inquiry.
I believe that once causation-in-fact is established, the proper analysis mandated by our Supreme Court would be to determine if LP & L owed a duty to protect the public from the risk which its pole presented. Hill v. Lundin, 260 La. 542, 256 So.2d 620 (1972). I would find that LP & L had such a duty. The harm which befell Joni Armand is easily associated with the conduct of LP & L in constructing and maintaining an unprotected metal utility pole in close proximity to a busy street. LP & L had a duty to protect the public against the risk that a motorist might lose control of her vehicle, drive it off the road and hit the utility tower, situated just inches from the curb. The extreme hazard to motorists presented by the tower's size, location, and construction, coupled with the likelihood of severe, permanent injuries to persons colliding with it indicate that an accident and injuries such as those suffered by the plaintiff in this case were foreseeable, and not a remote possibility as the majority opinion suggests.
Louisiana courts have many times considered the duty that those who own and maintain public highways and shoulders owe to persons injured when their vehicles travel off the roadway. Aside from Article 2317 strict liability, not applicable in this case, it has been repeatedly stated that those who maintain or place structures on the shoulders of roadways owe the public a duty to do so in a reasonably safe manner. Sinitiere v. Lavergne, 391 So.2d 821 (La. 1980); Lang v. Prince, 447 So.2d 1112 (La. App. 1st Cir.1984). This duty is imposed to protect those persons who may foreseeably be placed in danger when forced to drive upon the shoulder. Garrick v. Washington Parish, 440 So.2d 787 (La.App. 1st Cir.1983), writ denied 444 So.2d 1222 (La. 1984). In Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979), the Court extended the duty to protect persons who inadvertently drive onto the shoulder:
A motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably *806 safe condition. Conversely the Highway Department's duty to maintain a safe shoulder encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself travelling on or partially on, the shoulder.
372 So.2d at 1199.
Contrary to the majority's assertion, it is not a "rare exigency" for an out of control vehicle to leave a traveled roadway. The testimony of all the experts was that a significant percentage of automobile accidents involve a single car inadvertently driven off the roadway and that such accidents have long been a nationally recognized problem, foreseeable to those who erect structures on road shoulders. Moreover, by resolution the Jefferson Parish Council delegated to LP & L the right, and in my opinion, the responsibility to maintain the right of way granted to LP & L. This of course, would give to LP & L the prerogative of erecting guard rails on the right of way which would shield LP & L's towers from traffic on West Esplanade. Although LP & L erected the utility towers before the present roadway was laid, LP & L knew the right of way for streets extended to the base of the towers and that a roadway might be built close to the towers. I believe that when West Esplanade became a heavily traveled thoroughfare, it became LP & L's duty to protect motorists from the hazard posed by its towers then located only twenty-nine inches from the road.
Having found a duty owed by LP & L to Joni Armand, I also believe LP & L breached this duty, rendering it negligent. Most importantly, I believe that LP & L could have taken relatively simple and inexpensive measures to prevent or lessen the risk of foreseeable harm it created by maintaining an inherently dangerous structure so close to a busy roadway and making it virtually impossible for motorists who stray from the road to come to a safe stop. I conclude LP & L was negligent because its design, erection, and maintenance of the unshielded utility tower along West Esplanade breached a duty to protect motorists who inadvertently drive off the road. Therefore, I agree with the jury's finding that LP & L is answerable in damages for its negligence.
However, my inquiry would not end here, because, in addition to appealing the jury's findings of causation and negligence, which I would affirm, LP & L also appealed the jury's findings of comparative negligence which attributed 80 percent of the negligence to LP & L and only 20 percent to Joni Armand. So, I would next consider the negligence of Joni Armand in apportioning the respective faults of the parties.
Here, I am in agreement with the majority that Ms. Armand breached the duty to control her vehicle and to maintain a proper lookout for hazards, and that her negligence contributed substantially to the accident.
Although I agree with the jury's finding that both Joni Armand and LP & L were negligent and that the negligence of each substantially contributed to the accident and to Joni's injuries, I believe the jury was clearly wrong in assigning 80 percent of the fault to LP & L and only 20 percent to Ms. Armand.
In assessing the nature of the conduct of the parties and determining the correct percentages of fault, I would consider the factors set forth in Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La.1985):
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And ... the relationship between the fault/negligent conduct and the harm to the plaintiff....
Despite the considerations previously taken into account in finding LP & L negligent and despite the inherently dangerous nature of the utility tower, I cannot ignore *807 the fact that it was a visible hazard which Ms. Armand would not have struck had she maintained control of the vehicle. Another factor in my comparison of the parties' negligence is that LP & L's conduct created a continuing substantial likelihood of harm to a large number of people while Ms. Armand's conduct created a temporary risk of harm to a small number of people including herself. All circumstances considered, I would reduce the percentage of fault attributable to LP & L and correspondingly raise the percentage attributable to Joni Armand and then apply those percentages to the jury's determination of quantum. This procedure would not only be just, it would bring this Court's resolution of the case in line with the law of comparative negligence and well reasoned tort analysis.
BYRNES, J., dissents for the reasons assigned by WARD, J.