535 So.2d 518 (1988)
Hubie VIGREAUX
v.
LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, the City of New Orleans and the New Orleans Public Service Inc.
No. 88-CA-0074.
Court of Appeal of Louisiana, Fourth Circuit.
December 13, 1988.
Rehearings Denied January 18, 1989.
Sophia Pappas Barnett, Frank J. D'Amico, New Orleans, for plaintiff-appellant Hubie Vigreaux.
Caleb H. Didriksen, New Orleans, James Maher III, New Orleans, for defendant-appellee New Orleans Public Service Inc.
Before SCHOTT, BARRY, KLEES, CIACCIO and ARMSTRONG, JJ.
KLEES, Judge.
This suit arises out of an accident in which plaintiff, Hubie Vigreaux sustained permanent physical injuries when his automobile struck a utility pole on Tchoupitoulas Street. Plaintiff filed suit against defendants, the City of New Orleans, the Louisiana Department of Transportation and Development (DOTD) and New Orleans Public Service Incorporated (NOPSI), the owner of the utility pole. DOTD was summarily dismissed from the suit after it was determined that DOTD did not own or maintain Tchoupitoulas Street. Plaintiff does not appeal DOTD's summary dismissal. NOPSI also moved for and was granted a summary judgment. It is from this judgment that plaintiff appeals. We reverse.
Plaintiff was driving his automobile in an easterly direction on Tchoupitoulas Street between Nunn and St. Mary Streets during the early morning hours of January 1, 1984, when an unidentified vehicle confronted a sharp curve in the roadway and crossed the center line of Tchoupitoulas Street. Plaintiff swerved his vehicle to avoid a head-on collision, lost control of his car and struck a utility pole on the river *519 side of Tchoupitoulas Street. Plaintiff had not been drinking and the road conditions were dry at the time of the accident.
The NOPSI utility pole which plaintiff struck was located 100 feet from the corner of Nunn Street on the river side of Tchoupitoulas and eight inches from the street.
The issue before us is whether or not, as a matter of law, NOPSI owed a duty to plaintiff to avoid negligent conduct in the placement and design of its utility pole.
In support of the summary judgment, NOPSI relies principally on our decision in Armand v. Louisiana Power and Light Co., 482 So.2d 802 (La.App. 4th Cir.1986), writ denied 484 So.2d 669 (La.1986). There the plaintiff, Joni Armand, suffered severe permanent injuries when the car which she was operating jumped a curb on West Esplanade Avenue, slammed sideways into a La. Power & Light Co. pole, and was demolished. In reversing the trial court's judgment in favor of plaintiff by a 3-2 decision Judge Barry writing for the Court stated:
The location of the pole did not create an unreasonable risk of harm. To so hold would create absolute liability. We are cognizant of the inestimable number of poles and trees which line our streets, many next to or a few inches off the roadways. LP & L's pole is no more a legal cause of Joni's injuries than if she had hit an object in the road, lost control, then struck the pole. The pole's location in the elevated, parish approved, designated right of way was not a cause-in-fact of the accident, nor was it a substantial contributing factor. A utility company has no obligation to guard against rare exigencies such as an out of control vehicle leaving a traveled roadway. 482 So.2d at page 804.
While we readily admit the Armand decision was proper in that case, we conclude that the Armand decision does not control the result in this case. The facts in Armand are distinguishable from those in the instant matter in many respects. In Armand, Joni Armand was intoxicated when she hit the utility pole. It was misting rain and West Esplanade Ave. was wet. There was testimony to indicate that Joni Armand may have been speeding along the straight narrow avenue when her car jumped the 5½"-6" curb. The utility pole in Armand was 29"-30" from the curb on the grassy elevated border of a wide, open drainage canal. The car's front wheels stopped a few feet from the canal's sloping embankment.
In the instant matter, there is no evidence to indicate that plaintiff was intoxicated. Tchoupitoulas Street was dry and the accident took place immediately after plaintiff and the phantom car driver encountered the sharp 90 degree curve in the roadway. The utility pole which plaintiff hit was only 8" from the street and a steel plate approximately 3 to 5 feet was placed on the pole. The greatest distinction between the Armand case and the present one is that Joni Armand had the opportunity to present her case before a jury at trial. To uphold the granting of NOPSI's summary judgment in this matter precludes plaintiff from that opportunity.
We do not find that our decision in Armand stands for the principle that a utility company, as a matter of law, will never be held liable to a plaintiff for injuries incurred where the placement of a pole is not in the roadway itself or in an area designated for vehicles to voluntarily drive onto when leaving a primary roadway. Our decision in Armand said that in that particular case the location and design of La. Power & Light Co.'s pole was not the cause-in-fact of the accident, but rather Joni Armand's own negligence was the sole cause of the accident. We conclude it is possible that liability may be imposed where the placement of a pole close to the edge of a roadway constitutes a foreseeable and unreasonable risk of harm to users of the roadway. In such cases, the conditions of the roadway are critical in determining whether the location of a utility pole adjacent thereto constitutes an unreasonable risk of harm to users of the road. The sharp curve and general contours of Tchoupitoulas Street, the failure to warn motorists of the placement of the pole, the proximity of the pole to the street, whether *520 the utility company had notice of previous accidents at that location and whether alternative less dangerous locations for the pole existed are all circumstances from which a jury could conclude that NOPSI's placement of the pole constituted an unreasonable danger to users of the road.
The present case is before us on a summary judgment which is properly granted only if there was no genuine issue of material fact considering the pleadings and other documents of record. C.C.P. Art. 966. Plaintiff submitted to the trial court several affidavits and other evidence which indicate that there were other similar incidents involving the 90 degree curve on Tchoupitoulas Street between Nunn and St. Mary Streets, that NOPSI had knowledge of the dangers this curve presented to motorists and that NOPSI could have relocated the utility pole to a less dangerous location. Because it is conceivable that such factors may support a valid legal theory of liability on NOPSI and because such factors have not been foreclosed on, we conclude that summary judgment was erroneously granted. This conclusion is bolstered by the principle that the court in considering a motion for summary judgment should resolve every reasonable doubt against the mover. Oller v. Sharp Electric, Inc., 451 So.2d 1235 (La.App. 4th Cir.1984), writ denied 457 So.2d 1194 (La. 1984).
We do not suggest that plaintiff can or should prevail on the merits of the case. But a summary judgment is not to be used as a substitute for a trial on the merits. The court should not seek to determine whether it is likely the mover will prevail on the merits but rather whether there is an issue of material fact. Oller v. Sharp Electric, Inc., supra. Our conclusion is that the question of NOPSI's liability is factual.
Accordingly, the summary judgment in favor of NOPSI is reversed and set aside. The case is remanded to trial for further proceedings.
REVERSED AND REMANDED.
SCHOTT, J., concurs with reasons.
ARMSTRONG, J., concurs for the reasons assigned by SCHOTT, J.
BARRY, J., dissents with reasons.
CIACCIO, J., dissents for the reasons assigned by BARRY, J.
SCHOTT, Judge, concurring:
A party is entitled to a summary judgment if two conditions are fulfilled: First, there must be no genuine issue of material fact; and, second, based on such uncontradicted facts, the mover is entitled to a judgment as a matter of law.
I am satisfied that there are issues of material fact which would preclude a summary judgment, but the core of NOPSI's argument is that irrespective of the facts it cannot be held liable because of the location of its telephone pole. It argues that the placement of the pole cannot be a cause-in-fact of plaintiff's injuries as a matter of law.
Armand v. La. Power & Light Co., 482 So.2d 802 (La.App. 4th Cir.1986), writ denied 484 So.2d 66 contains language which seems to adopt this principle when read out of context from the whole opinion. But the case was no broader than its own facts. The court concluded that the placement of that particular pole under all the circumstances of that case was not a cause-in-fact of that particular accident.
The analogy between utility poles and trees is not sound. When streets were originally placed in old New Orleans lined with trees there was no threat of danger, but with the passage of time the convenience of the public required the streets to be widened and the development of high speed vehicles joined with the trees (now much larger after decades of growth) to create a hazard for drivers. The city could eliminate the hazard by cutting the trees, but the public would thereby be deprived of their beauty and the aesthetics of the city's streets and avenues would be sorely compromised. In my opinion the risk of harm occasioned by trees along streets is far outweighed by the value of the trees and the loss which would be suffered were they *521 removed. For this reason, I would reject the argument that the placement of a tree could be a legal cause of an accident. But the same rationale does not apply to utility poles.
It is common practice for the city to install light poles near roadways, but it is also the practice to use poles which shatter on impact and are less likely to cause the errant driver serious injury. This suggests that the city recognizes some duty to minimize damages in the placement of its poles. At a trial the plaintiff may be able to establish such facts.
A holding that NOPSI could not be liable as a matter of law because the plaintiff either lost control of his vehicle on his own or was forced off the road by a phantom vehicle would conflict with the holding in Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979). There the court held that a motorist who inadvertently drove off a highway onto its shoulder and who lost control of her vehicle upon striking a dangerous rut on the shoulder was not barred from recovery for her injuries by her negligence in leaving the paved surface.
I do not think the summary judgment was appropriate and would remand for a trial on the merits.
ARMSTRONG, J., concurs for the reasons assigned by SCHOTT, J.
BARRY, J., dissents with reasons.
CIACCIO, J., dissents for the reasons stated by BARRY, J.
BARRY, Judge, dissenting.
I have considered every reasonable doubt against the utility company and fail to find any genuine issue of material fact which would deny summary judgment.
"We are cognizant of the inestimable number of poles and trees which line our streets, many next to or a few inches off the roadways." Armand v. Louisiana Power and Light Company, 482 So.2d 802 (La.App. 4th Cir.1986) writ denied, 484 So.2d 669 (La.1986) should put to rest a utility company's liability based on the location of its pole(s).
The majority attempts to distinguish Armand where that utility pole was 29"-30" off the roadway, as opposed to 12" from this street. The pole's location is not contested and not at issue.
The majority points to the intoxicated driver in Armand. That fact is irrelevant as to whether this pole was the cause-in-fact of this accident.
The majority notes this Court's 3-2 majority in Armand. The Supreme Court denied writs in Armand.
The majority concludes "it is possible that liability may be imposed where the placement of a pole close to the edge of the roadway" causes injury (emphasis added). How close? That conclusion does not set a standard which will resolve anything.
The plaintiff claims a "phantom" driver forced him off of the road at 2:30 a.m. on New Year's morning. If that is accepted, then the cause-in-fact of the accident was the alleged phantom driver and/or the plaintiff's failure to control his vehicle and/or the alleged dangerous road condition.
An exhibit shows the pole is located more than 100 feet from the curve in the roadway. A few feet behind the pole is a concrete building which the plaintiff would have hit if the pole was not there.
In our metropolitan area, as quoted by the majority from Armand, our roadways are bordered with utility poles and trees, many at the edge of the street and some tree roots in the streets. Based on the majority's logic, it would be easy to say that any of those constitute "a foreseeable and unreasonable risk of harm to users of the roadway."
The majority reasons: "In such cases [where the placement of a pole close to the edge of a roadway constitutes a foreseeable and unreasonable risk of harm] the conditions of the roadway are critical in determining whether the location of the utility pole adjacent thereto constitutes an unreasonable risk of harm to users of the road." The majority then suggests that the utility company should warn motorists *522 of the pole placement (due to its proximity to the street?).
The majority suggests that prior accidents at the same location are a "circumstance from which a jury could conclude that NOPSI's placement of the pole constituted an unreasonable danger." I suppose conversely, poles next to the roadway are not dangerous if never struck.
The majority concludes:
If a plaintiff submits affidavits[1] and other evidence that there were similar accidents involving the curve on Tchoupitoulas Street [the affidavits in this record are suspect, at best; more importantly, the accident occurred a distance from the curve];
If the utility company had knowledge of the dangers this curve presented to motorists [a subjective conclusion to be drawn by the defendant];
That NOPSI could have relocated the utility pole to a less dangerous position [a formidable project that could be undertaken for the thousands of poles and trees which curtain our streets].
Those three possibilities beg the questionwhat caused this accident? The answerthe "phantom" driver, the plaintiff's negligence, the dangerous curve.
As in Armand, in this case "the pole's location in the elevated, parish approved, designated right of way was not a cause-in-fact of the accident nor was it a substantial contributing factor. A utility company has no obligation to guard against rare exigencies such as an out of control vehicle leaving a traveled roadway."
Summary judgment was proper.
NOTES
[1] Plaintiff's counsel attempted to file an "affidavit" in this Court on September 7, 1988. The paper is undated, does not bear witnesses, and is not a part of the trial court record. On November 2, 1988 two additional affidavits were submitted to this Court which are not part of the trial court record. During argument the Chief Judge strongly admonished plaintiff's counsel and ordered the documents stricken.