645 So.2d 666 (1994)
Nita BEECHER, as Tutrix for the Minor Child, Senekah Leigh Beecher, and Mark E. Gassaway, as Tutor for the Minor Child, Kristin Lynn Gassaway
v.
Thomas G. KEEL, III, et al.
No. 94-CA-0314.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 1994.
Rehearing Denied December 13, 1994.
*667 Franklin G. Shaw, Leger & Mestayer, New Orleans, for appellants.
Eugene G. Taggart, Nora F. McAlister, Ann E. Levine, Monroe & Lemann, New Orleans, for appellee, Louisiana Power & Light Co.
*668 Richard Ieyoub, Atty. Gen., John L. Dorsey, Sp. Asst. Atty. Gen., New Orleans, for appellee, the State of Louisiana.
Before KLEES, CIACCIO and ARMSTRONG, JJ.
CIACCIO, Judge.
This suit arose out of an automobile accident which occurred at about 6:50 a.m. on December 12, 1987 when an automobile driven by Thomas Keel left the road and collided with a utility pole. Plaintiffs are the representatives of the minor children of Keel's passenger, Rebecca Beecher, who suffered fatal injuries as a result of the accident. Following a bench trial, the trial court granted defendants' motion for involuntary dismissal, dismissing plaintiffs' suit against Louisiana Power and Light Company (LP & L) and the State of Louisiana, Department of Transportation and Development (the State). Plaintiffs have appealed from this judgment. We affirm.

FACTS
At trial, John Thevenot, a Jefferson Parish Sheriff Officer, testified that he observed the accident in this case on December 12, 1987 at approximately 6:50 a.m. Thevenot stated that on this date, he was travelling on Airline Highway and was stopped at a red light behind a public service bus at the intersection of Manson Avenue. Thevenot noticed a Plymouth Satellite stopped in the middle lane next to the bus. As the light changed to green, the Plymouth's wheels spun on the pavement for a few seconds and then stopped. It had been raining the night before and the pavement was wet.
Thevenot stated that the vehicle continued in the center lane for another 30 to 40 feet at which point the rear of the vehicle swerved toward the highway median. The Plymouth straightened out and continued down the road in the middle lane. Thevenot stated that he lost sight of the Plymouth as it abruptly entered the right lane in front of the bus. He then heard a loud crash, and when the bus passed Thevenot saw the Plymouth wrapped around the utility pole.
The driver of the Plymouth, Thomas Keel, was severely injured in the accident and was unable to testify at trial. Keel's passenger, Rebecca Beecher, suffered fatal injuries as a result of the accident.
This suit was filed on behalf of Rebecca Beecher's two minor children for the damages they suffered as a result of their mother's death. Plaintiffs filed suit against the State for the negligent maintenance of the state highway and against LP & L as owner of the utility pole. Plaintiffs claims against the State and LP & L are that the steel transmission pole which was struck by the Keel vehicle was placed too close to the travelled roadway in violation of clear zone standards. Plaintiffs allege that the negligence of the State and LP & L in the placement of and/or failure to relocate the utility pole caused this accident and decedent's resulting death.
This matter was tried in a bench trial against LP & L and the State on October 11-13, 1993. Following the presentation of plaintiffs' case-in-chief, defendants moved for an involuntary dismissal which was denied by the trial court. However, following the presentation of defendants' case, the trial court granted the defendants' motions for dismissal and dismissed plaintiffs' suit against the State and LP & L.

DISCUSSION
On appeal, appellants assert several assignments of error.
Appellants first contend that the trial court erred in failing to admit certain documents into evidence which were eventually proffered into the record. Plaintiffs sought to introduce evidence of other accidents which had previously occurred on Airline Highway as well as various standards relating to the placement of utility poles along public roadways.
Prior to trial, LP & L and the State filed Motions in Limine seeking an order from the trial court excluding evidence of other accidents involving vehicles running into objects or structures located adjacent to roadways. The trial court granted the defendants' motions, finding that evidence of prior accidents was inadmissible. Appellants allege that the trial court's ruling was erroneous, and that evidence of prior accidents at other locations *669 should have been considered by the trial court.
This court held in Davis v. Louisiana Power & Light Co., 612 So.2d 235, 239 (La. App. 4th Cir.1992), writ denied, 615 So.2d 336 (La.1993), that admissibility of evidence concerning prior accidents in confined to those involving substantial identity of circumstances because of the risk of prejudice involved. The court in Davis, citing Lee v. K-Mart Corp., 483 So.2d 609, 613 (La.App. 1st Cir.1985), writ denied, 484 So.2d 661 (La. 1986), stated:
Thus, to be relevant the other accident should occur at substantially the same place and under substantially the same conditions and must be caused by the same or similar defect, danger, act or omission. Evidence of other accidents occurring at substantially different places or under different circumstances or conditions is irrelevant and inadmissible.
Appellants attempted to introduce evidence regarding an accident which occurred on November 16, 1987 at the intersection of Airline Highway and Little Farms where the driver struck an LP & L utility pole. This accident became the subject of a suit filed in Jefferson Parish entitled Mayoral v. Middle South Utilities, 618 So.2d 436 (La.App. 5th Cir.1993). The trial court ruled that evidence of this accident was inadmissible, and plaintiffs proffered the police report of the Mayoral accident into evidence. However, the Mayoral accident occurred at a different location involving a different utility pole, for different reasons and under substantially different circumstances and conditions than the accident in the present case. We are unable to find an identity of circumstances between this accident and the Mayoral accident, and we conclude that the trial court properly excluded the police report for the Mayoral accident.
Appellants also contend that the trial court should have admitted accident statistics compiled by the State in a computer report entitled "DOTD 1985 Abnormal Intersections" which was proffered into evidence at trial. This computer printout of a study conducted by the State was produced in discovery, and the State filed a Motion to Suppress the evidence pursuant to 23 U.S.C. Section 409. The trial court denied the motion, and this Court denied defendant's application for supervisory review. The State then sought a writ from the Supreme Court which was granted wherein the Court stated:
Writ granted. The ruling of the trial court, that the Department of Transportation and Development's accident data for Airline Highway is admissible, is set aside. The trial court must address the admissibility of each item of evidence as it is offered, in accordance with the criteria of 23 U.S.C. Section 409. If the trial court finds that the data were compiled pursuant to 23 U.S.C. Section 152, "or for the purpose of developing any highway safety construction project which may be implemented utilizing Federal-aid highway funds," they shall not be admitted into evidence. 23 U.S.C. Section 409 (1991. Because the data have already been produced, we do not address the issue of whether the 1991 amendments to Section 409 should be applied retroactively.

Beecher v. Keel, 607 So.2d 549 (La.1992).
During trial, the trial court found that the report listing the abnormal intersections was inadmissible. Appellants now argue that the computerized report is admissible pursuant to Wiedeman v. Dixie Elec. Membership Corp., 627 So.2d 170 (La.1993). However, although the court in Wiedeman held that accident reports, traffic counts and other raw data collected by the State are admissible, the court specifically stated that "other compilations made for developing highway safety construction projects which would use Federal-aid funds" are not admissible pursuant to 23 U.S.C. Section 409. We find that the computerized report is a compilation of data from other sources which, according to the testimony of Lacey Glascock, Deputy Secretary for the DOTD, was prepared at least in part as a result of the federal requirements regarding highway funding and as such is not admissible into evidence pursuant to Section 409. Wiedeman, 627 So.2d at 173.
In addition, plaintiffs failed to introduce any evidence at trial to show that the accidents listed on the report were substantially *670 similar to the accident which occurred in this case. Davis, supra. We find no error of the trial court in refusing to admit this computerized report into evidence.
Appellants also contend that the trial court erred in refusing to admit into evidence various design standards manuals which specified the applicable clear zone standards for the placement of utilities in the highway right-of-way. The trial court did admit into evidence the 1969 clear zone standards which were in effect prior to the 1972 widening of Airline Highway, but refused to admit subsequent standards.
The evidence presented at trial indicates that the steel transmission pole was installed in the highway right-of-way under the State's permit issued to LP & L in 1966. At the time the pole was installed in 1968, there were no specific clear zone requirements. William Hickey, the road design engineer for the State of Louisiana, testified that although the standards changed after the installation of this pole, state policy is to bring the road up to current standards only when the road is reconstructed.
The evidence further indicates that the area of Airline Highway near Manson Avenue was widened in 1972. Prior to this time, the minimum clear zone standard was six feet from the travelled portion of the roadway. There was no evidence presented that the area of Airline Highway where this accident occurred was ever "reconstructed," and therefore the design standards in effect after the initial construction of the highway are inapplicable. Testimony at trial indicates that although the highway was widened in 1972, there was no requirement to change the placement of the utility poles within the right-of-way. Under these circumstances, we find no abuse of discretion of the trial court in refusing to admit the design manuals which became effective subsequent to the 1972 widening project.
Appellants next argue that the evidence at trial proves that steel transmission pole violated the clear zone standards contained in the 1969 manual as the concrete base of the pole was only 5 feet 2 inches from the travelled portion of the roadway, although the pole itself met the minimum standard of six feet from the roadway. Appellants contend that the evidence presented indicated that the pole and its concrete base are one integral unit, and there was no evidence that the base could have been "shaved off" to comply with the standards. Appellants argue that the trial court erred in its "assumption that the defendants would have removed the concrete foundation."
The trial court, in oral reasons for judgment, stated:
... the Court was extremely persuaded by the fact that that witness statedin this Court's opinion, that witness suggested that if the concrete collar, which was the only impediment into the minimum standard, had been moved, then this accident wouldthe results of this accident would still have been the same.
The trial court was referring to the testimony of plaintiffs' expert, Jarvis Michie, who stated at trial:
Q. Look at photograph exhibit plaintiff's 30. Does it not appear from that exhibit that the steel pole and the passenger compartment are intruding into one another?
A. Yes.
Q. You notice how that piece of concrete is cut on the back of that pole?
A. Yes.
Q. Even with the pole?
A. Yes.
Q. Assume that the state would have been out there and said, "Well, cut off that concrete collar, I guess, what, eight inches flush back with the pole."
A. 10 and a half inches.
Q. Yeah. "Cut it back 10 a half [sic] inches. Cut it back flush with the pole."
. . . . .
Q.... [w]ould you not have had the same intrusion of that steel pole with that vehicle with that concrete collar cut away like that?
A. Yes, you would.

*671 Q. Of course. I didn't quite understand one of your answers to Mr. Dorsey's question. But I thought you said that if the pole, the steel pole was 6 feet away from the travel lane, that would have met minimum standards?
A. Yes.
The trial court then questioned this witness as follows:
BY THE COURT:
Q. Now as I interpret it, if the concrete column were not there, this thing would have met minimum standards, right?because it would have been at 6 feet?
A. That is correct. It would have met minimum standards, yes.
Q. And based upon Mr. Taggart's second-to-last question, you said if it had met minimum standards, consequences would have been the same, is that right?
A. Yes.
Based on this testimony, the trial court apparently found that although the concrete collar or base of this steel pole may have been in violation of the clear zone standards, the presence of the collar did not cause the damages in this accident, and in fact, the result of the accident would have been the same had the concrete collar not been there. This conclusion does not suggest that the State would have removed the collar from the base of the pole, but that the collar did not contribute to the cause of this accident. We find this conclusion to be well-supported by the record, and we find no error of the trial court in making this determination.
Appellants next contend that the trial court erred in not allowing rebuttal testimony before granting a dismissal. Appellants argue that once the trial court refused to grant the dismissal at the close of plaintiffs' case, the court was required to hear all evidence, including any rebuttal testimony, prior to granting a dismissal.
Following the close of defendants' case, plaintiffs' attorney stated the plaintiffs desired to recall Jarvis Michie to rebut some of the testimony presented in defendants' case. However, Mr. Michie had returned to his hometown of San Antonio, and the trial court refused to hold the trial open to allow arrangements to be made for Mr. Michie's return.
Appellants subsequently took the deposition of Mr. Michie and proffered his testimony into the record. We have reviewed the proffered testimony and conclude that the trial court did not err in refusing to allow the rebuttal testimony at trial.
The trial court has great discretion in controlling the presentation of evidence, including the power to admit or refuse to admit rebuttal evidence. White v. McCoy, 552 So.2d 649, 658 (La.App.2d Cir.1989). Evidence in rebuttal is confined to new matters raised by the defense. Rebuttal is not a repetition of plaintiff's theory of the case. Id.
Our review of the proffered testimony indicates that the testimony sought to be countered in the rebuttal arose during plaintiffs' case on cross-examination of plaintiffs' expert witness. Plaintiffs were given the opportunity to question the witness on re-direct.
Under these circumstances, we find no abuse of the trial court's discretion in refusing to permit the rebuttal testimony. Further, we find no manifest error in the trial court's decision to grant defendants' motion for involuntary dismissal at the close of defendants' case.
Finally, appellants contend that the trial court erred in finding that there was no duty owed to relocate or guard the steel pole in this case. Appellants argue that LP & L owes a duty to comply with clear zone standards such that its utility structures do not pose a foreseeable and unreasonable risk of harm to users of the roadway, citing Vigreaux v. Dept. of Transp. & Dev., 535 So.2d 518 (La.App. 4th Cir.1988), writ denied, 540 So.2d 329 (La.1989). Appellants contend that LP & L breached its duty by failing to guard the pole with a barrier or to move the pole to comply with the clear zone standards.
However, in the Vigreaux case, this Court reversed a summary judgment granted in favor of the utility company and remanded *672 the case for trial on the merits. The Vigreaux case did not hold that the utility company owes a duty to comply with clear zone standards. Further, the court in Vigreaux did not find liability on the part of the utility company for the placement of the pole, but only found that several factual issues precluded summary judgment.
Appellants also contend that the State breached its duty to plaintiffs to keep the roadway safe, citing Smith v. City of New Orleans, 616 So.2d 1262 (La.App. 4 Cir.), writs denied, 624 So.2d 1232, 1233 (La.1993). In that case, the court held that the configuration of the curved roadway together with the location of the utility pole created an unreasonable risk of harm, and that the defect could have been cured by moving the utility pole five to ten feet and installing a barrier. In the Smith case the court also found that evidence of prior accidents at this location was sufficient to establish constructive knowledge of the defective condition on the part of the State.
However, we find the Smith case to be distinguishable from the present case. Here, there was no evidence presented that roadway was curved at the location where the accident occurred creating a defective condition. Further, plaintiffs failed to show that the State was aware of prior accidents at this location involving the utility pole.
Rather, the evidence in the record supports a finding that the State and LP & L had no duty to relocate or guard the utility pole in question.
The evidence presented at trial indicates that at the time the pole in this case was constructed there were no "clear zone" standards regarding the placement of utility poles. Although the evidence indicates that standards were subsequently set forth which provided for a six foot minimum clear zone from the edge of the roadway to the utility pole, the evidence fails to show that the pole should have been moved to comply with these standards.
At trial William Hickey and Dr. Olin Dart, who were called as witnesses by plaintiffs, as well as Ned Walton, defendants' expert, testified that the 1972 widening project did not entail major reconstruction and under these circumstances the State was not obligated to move the pole to comply with new highway standards. Although Jarvis Michie, plaintiffs' expert, testified that the pole should have been moved during the 1972 widening project or a barrier should have been installed, the testimony of Ned Walton contradicts Michie's testimony:
During the re-direct testimony of Walton, the Court questioned the witness as follows:
Q. If at the time of this widening project in '72, the State or LP & L had measured the distance from the curb to the steel pole, should they then have moved the pole?
A. No.
Q. Why not?
A. It was not major reconstruction. And that's the whole concept below major reconstruction is that you can make improvements to a roadway without changing the total environment.
Q. Should they then have put up a barrier?
A. No sir.
The trial court apparently made a determination to credit the testimony of Mr. Walton who stated that the State did not have a duty to move the pole or erect a barrier to comply with new standards, rather than that of Mr. Michie who stated that the pole should have been moved or barricaded. We find this determination to be within the trial court's discretion, and absent manifest error, we decline to disturb this finding.
We have carefully reviewed the entire record in this case and fail to find that the trial court was clearly wrong in its determination of liability. Although defendants are obligated to keep highways and shoulders reasonably safe for non-negligent motorists, they are not the guarantors of the safety of roadway travellers. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). In order for defendants' conduct to be considered the legal cause of decedent's injuries, the conduct must be a cause in fact of the harm and defendants must have breached their duty of care which encompasses the risk of harm.
*673 The evidence presented at trial reveals that the steel transmission pole in this case was located six feet from the travelled portion of the roadway. The concrete base of the pole measured approximately five feet two inches from the roadway. Prior to the accident, the Keel vehicle was in the center lane of traffic on Airline highway, when the driver apparently lost control of the vehicle. Evidence in the record indicates Keel was intoxicated at the time of the accident.
There was also evidence in the record in the testimony of the State's road design engineer, William Hickey, that the purpose of enactment of the clear zone standards was to protect an errant driver who inadvertently leaves the travelled way. Both Jarvis Michie, plaintiffs' expert, as well as Lacey Glascock, the deputy secretary for the DOTD, testified that the actions of the Keel vehicle in leaving the middle lane and striking the utility pole on the side of the road did not constitute an errant driver, but a driver who was out of control. Mr. Glascock testified that there can be no physical protection for this type of driver. Mr. Michie also testified that although Keel was in the center lane of traffic, Keel failed to take any action to avoid this accident, and he was obviously out of control.
Under these circumstances, we find that the evidence in the record supports the trial court's finding that the utility pole in this case did not create an unreasonable risk of harm to the occupants of the Keel vehicle. The trial court apparently concluded that the negligence of the driver of the vehicle caused the accident, and defendants could not have protected the driver from striking the pole, even if the pole had been relocated. We find no manifest error in such a determination.

CONCLUSION
Accordingly, for the reasons assigned, the judgment of the trial court rendered in favor of the State of Louisiana, through the Department of Transportation and Development and Louisiana Power and Light Company, dismissing plaintiffs' claims against them, is hereby affirmed.

AFFIRMED.
KLEES, J., dissents with reasons.
KLEES, Judge, dissenting.
I would reverse the trial court's involuntary dismissal of the State.
In my opinion, plaintiffs showed a substantial identity of circumstances between the instant case and the Mayoral accident such that evidence of the prior accident should have been admitted under Davis v. Louisiana Power & Light Co., 612 So.2d 235 (La. App.4th Cir.1992), writ denied, 615 So.2d 336 (La.1993). The Mayoral accident was a single vehicle collision with a virtually identical steel pole in the same line as the transmission pole involved herein. Moreover, the potential for prejudice, which is the rationale for excluding prior accidents not substantially similar, is greatly reduced in a bench trial such as the instant one.
The trial court also erred in excluding the "DOTD 1985 Abnormal Intersections" report. I do not believe the testimony supports the trial court's conclusion that this report was inadmissible under "Wiedeman v. Dixie Electric Membership Corp., 627 So.2d 170, 173 (La.1993). Where the record reflects that the report was compiled for numerous uses rather than primarily for one purpose, I would admit it.
Finally, I believe that the State clearly breached its duty to keep its highways reasonably safe for nonnegligent motorists by its failure to move the pole or to otherwise correct the problem during the 1972 widening of Airline Highway. The record shows that the pole in question did not meet the State's own minimum safety standards in effect in 1972 for distance of obstacles from the roadway. The State failed to show that it would have been either physically or financially impossible to move the pole during the widening project; in fact, it was shown to be entirely feasible. I believe that the relevant question should not be whether the highway project qualifies as "major reconstruction", but rather, whether the highway in question presents an unreasonably dangerous hazard of which the State has constructive knowledge and which can be feasibly corrected during any highway project. See Hunter v. *674 Dept. of Transp. & Dev., 620 So.2d 1149, 1153 (La.1993).
For these reasons, I respectfully dissent.