718 So.2d 455 (1998)
John S. GODFREY
v.
BOSTON OLD COLONY INSURANCE COMPANY, et al.
No. 97-CA-2569.
Court of Appeal of Louisiana, Fourth Circuit.
May 27, 1998.
Rehearing Denied August 14, 1998.
*456 Patrick M. Files, Jarrell E. Godfrey, Jr., The Godfrey Firm, New Orleans, for Plaintiff/Appellant.
David F. Bienvenu, Nathan L. Schrantz, Penny Dowd Liuzza, Hoffman, Siegel, Seydel, Bienvenu & Centola, New Orleans, and Wayne T. McGaw, New Orleans, for Defendant/Appellee Bellsouth Telecommunications, Inc., etc.
Eugene G. Taggart, Carter B. Wright, Taggart, Morton, Ogden, Staub, Rougelot, Brocato & O'Brien, L.L.C., New Orleans, for Defendant/Appellee Entergy.
Before ARMSTRONG, PLOTKIN and JONES, JJ.
PLOTKIN, Judge.
Plaintiff John S. Godfrey appeals a trial court judgment granting a motion for summary judgment in favor of defendants Entergy New Orleans ("Entergy") and BellSouth Telecommunications ("BellSouth"). Because we find that material issues of fact exist, we reverse the summary judgment and remand to the trial court.

Facts
The following facts, although not established by trial, appear to be undisputed. For the purposes of this appeal, we will assume them to be substantially correct.
Mr. Godfrey and three of his friends were returning home from an uptown bar in the early morning hours of September 21, 1991, when Ricky Price, the driver, lost control of the automobile. The vehicle struck a utility pole owned by Entergy and an attached guy wire owned by BellSouth. Mr. Price was killed in the accident, Mr. Godfrey suffered injuries rendering him a quadriplegic. The Orleans Parish Coroner's office reported that Mr. Price had a blood alcohol level of.13% at the time of his death; the medical center that treated Mr. Godfrey after the accident reported that Mr. Godfrey had a blood alcohol level of .29%.
The accident occurred near a curve on the two-lane, Metairie-bound side of Palmetto Street in the City of New Orleans. After Mr. Price lost control, the vehicle slid approximately 100 feet before leaving the roadway and striking the pole. A 25 m.p.h. speed limit sign was posted ahead of the curve. However, this speed limit was imposed temporarily while construction was being performed in an area located some distance past the accident scene. The regular speed limit in the area was 35 m.p.h. The investigation by the New Orleans Police Department revealed that the vehicle was traveling approximately 54  57 m.p.h. through the curve. Additionally, one of the other passengers in the vehicle testified that the vehicle was traveling approximately 55 m.p.h. when it left the roadway. However, Mr. Godfrey's expert witness opined that the speed of the vehicle could not have exceeded 42 m.p.h.
Mr. Godfrey avers that the accident occurred because poor roadway conditions and the negative super-elevation of the Palmetto Street curve caused Mr. Price's vehicle to veer to the right. Mr. Godfrey argues that the poor condition of the roadway, plus Mr. Price's attempt to maneuver the vehicle in the face of such a condition, caused the vehicle to spin out of control and leave the road.
*457 The vehicle struck BellSouth's guy wire, which was located 16.5 inches from the edge of the road. After striking the wire, the vehicle rotated into Entergy's utility pole, which was located 22 inches from the roadway. The pole and the guy wire were located on a public right of way; a fence was located approximately two feet behind the pole.
In filing suit against Entergy and BellSouth, Mr. Godfrey alleges negligent installment of the pole and attendant guy wire too close to the roadway. Furthermore, Mr. Godfrey alleges that Entergy failed to relocate the pole even though it knew the pole's location posed an unreasonable risk of harm. Specifically, Mr. Godfrey claims that Entergy's placement of the pole in such close proximity to the poorly-maintained roadway posed an unreasonable risk of harm to drivers and passengers. In addition, Mr. Godfrey argued that Entergy should have relocated the pole as soon as it received notice of prior accidents at the scene. The trial judge granted a motion for summary judgment filed by Entergy and BellSouth, holding that driver negligence was the sole cause of the accident and that Entergy placed the pole in the only available location. Finding that the trial court made improper factual findings on a motion for summary judgment, we reverse and remand to the trial court.[1]

Standard for reviewing summary judgments
Appellate courts review summary judgment decisions de novo. Walker v. Kroop, 96-0618, (La.App. 4 Cir. 7/24/96), 678 So.2d 580, 583. The appellate court, like the trial court, should uphold a summary judgment decision only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues of material fact and that the mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966(B). "Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." Id. (citation omitted).
Louisiana Code of Civil Procedure article 966 was amended in 1996 to state that summary judgments are favored. The article was amended again in 1997 to clarify issues concerning the movant's burden of proof. Subparagraph C(2) of article 966 provides:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
LSA-C.C.P. art. 966 C(2).
This Court explicated the 1997 amendment to C.C.P. article 966 in Cressionie v. Liberty Mutual Ins. Co., 98-C-0534 (La.App. 4 Cir. 4/8/98), 711 So.2d 364, stating as follows:
Procedurally, under the 1997 amendments to the summary judgment law, La. C.C.P. art. 966, a court's first task on a motion for summary judgment remains the same  to determine whether the moving party's supporting documents  pleadings, depositions, answers to interrogatories, admissions and affidavits  are sufficient to resolve all material factual issues. La. C.C.P. art. 966(B). If the court finds that a genuine issue of material fact exists, *458 summary judgment must be denied. Walker v. Kroop, 95-0618 (La.App. 4 Cir. 7/24/96), 678 So.2d 580, 584.
However, if the court finds, based on the evidence presented by the movant, that no genuine issues of material fact exist, the party opposing the motion for summary judgment is required to "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." La. C.C.P. art. 966(C)(2). In meeting his burden of proof, the movant is expressly not required "to negate all the essential elements of the adverse party's claim, action or defense," but only "to point out to the court that there is an absence of factual support for one or more elements." Id. Once the movant has met his burden and the burden shifts to the party opposing the motion, the non-moving party is not allowed to rely on the allegations of his pleadings in opposition to a properly-supported motion for summary judgment. Oakley v. Thebault, 96-0937 (La.App. 4 Cir. 11/13/96), 684 So.2d 488.
Id. at 366.

Genuine issues of material fact
Mr. Godfrey claims that Entergy and BellSouth failed to carry their burden of proving that no genuine issues of material fact exist. Mr. Godfrey argues that the location of the pole and guy wire was unreasonably dangerous because the pole could have been located further back from the roadway, claiming that his injuries would have been less severe had it been located only a few feet further back. Mr. Godfrey also argues that a "chunk" missing out of the pole suggests that other vehicles had crashed into the pole prior to the accident which caused his injuries. In addition, Mr. Godfrey notes that the pole was inspected in 1990, thereby placing Entergy on notice of such accidents. On the other hand, Entergy claims that no accidents involving the pole have been reported over the twenty-five years of the pole's existence.
More importantly, Entergy and BellSouth argue that the above remaining issues of fact do not constitute "genuine issues of material fact" preventing summary judgment because the evidence indicates that driver negligence was the sole cause of the accident. Mr. Godfrey contends that he presented sufficient evidence concerning the condition of the roadway and the location of the pole to raise genuine issues of material fact concerning the cause of the accident. However, we note that most of the cases cited by Entergy in support of this argument, which are discussed below, were all decided after a full trial on the merits.
For example, in granting the motion for summary judgment filed by Entergy and BellSouth, the trial court relied heavily on this Court's opinion in Armand v. Louisiana Power & Light Co., 482 So.2d 802 (La.App. 4 Cir.), writ denied, 484 So.2d 669 (La.1986), which was decided after a trial on the merits. In Armand, the plaintiff's car struck a utility pole located approximately 29 to 30 inches from the roadway. Id. at 803. The plaintiff had a blood alcohol level of .23% at the time of the accident. Id. Conflicting testimony suggested that the plaintiff was driving at a speed between 35 and 50 m.p.h. in a 35 m.p.h. speed zone. Id.
After hearing all of the evidence, the Armand jury found the defendant 80 percent negligent for its placement of the pole. Id. This court reversed, holding that the placement of the pole was not the cause-in-fact of plaintiff's accident. Id. We held that the sole cause of the accident was the plaintiff's reckless driving, coupled with her intoxication, and that serious injury would have occurred regardless of where the pole was located. Id. at 804. Thus, we found, the placement of the pole in that case did not create an unreasonable risk of harm.
A similar result was reached by this court in Campo v. Louisiana Power & Light Co., 560 So.2d 966 (La.App. 4 Cir.), writ denied, 566 So.2d 396 (La.1990), another decision made only after a trial on the merits. In Campo, this court held that the DOTD was not liable, finding that the sole cause of the accident was the plaintiff's intoxication and inability to control his vehicle. The Court also noted that the plaintiff was familiar with the curve and placement of the pole and thus should have avoided the accident. Id. *459 Entergy also cites Beecher v. Keel, 94-CA-0314, (La.App. 4 Cir. 9/29/94), 645 So.2d 666, writ denied, 95-0108 (La.3/10/95), 650 So.2d 1185, in support of its argument. Although Beecher was decided on a motion for involuntary dismissal, the court refused to grant the dismissal until after presentation of all the evidence  i.e., a full trial on the merits. In Beecher, this court held that the placement of a utility pole six feet from the roadway was not the cause-in-fact of the plaintiff's accident. The court noted that the driver's negligence was the sole cause of the accident, and that the plaintiff had failed to present evidence of prior accidents occurring at the same place. Id.
On the other hand, in Boteler v. Rivera, 96-CA-1507 (La.App. 4 Cir. 9/17/97), 700 So.2d 913, writs denied, 97-3076, 97-3102 (La.2/13/98), 709 So.2d 756, 757, the plaintiff's vehicle drifted off a rural highway for about 50 to 200 feet before colliding with a utility pole located approximately three to four feet from the road's edge. No alcohol was involved in the accident. Id. This court held the defendant utility company 25 percent liable because the location of the pole posed an unreasonable risk of harm to motorists. Id. at 919. We noted that it would be impossible for a vehicle to leave the road without hitting the pole, and that, although the option of relocating the pole was not feasible, LP & L could have placed reflectors on the pole to make its location less dangerous. Id. We noted further that LP & L had at least constructive, if not actual, knowledge that a pole located less than a car's width from the traveled portion of a highway poses a risk of harm which it had a duty to protect against. Id.
The above review of this court's jurisprudence on the issue of whether the placement of a utility pole created an unreasonable risk of harm shows that this court is extremely reluctant to decide the issue on anything other than a full trial. The question of whether a condition creates an unreasonable risk of harm is a mixed question of law and fact. Every case in which this court has held that a utility pole did not create an unreasonable risk of harm was decided after a full trial on the merits. Moreover, the Boteler case, which is this court's most recent statement on the issue, proves conclusively that the placement of a utility pole can create an unreasonable risk of harm.
In the only case previously decided by this court concerning a summary judgment on the issue of whether a utility pole created an unreasonable risk of harm, Vigreaux v. DOTD, 535 So.2d 518 (La.App. 4 Cir.1988), writ denied, 540 So.2d 329 (La.1989), this court reversed the trial court's summary judgment decision in favor of the defendant. In Vigreaux, the plaintiff's vehicle struck a pole located eight inches from the roadway after it allegedly swerved to avoid a head-on collision. No alcohol was involved, and the plaintiff submitted affidavits evidencing other accidents at the same location. Id.
In Vigreaux, this court listed the following factors to be considered in determining whether particular road conditions presented an unreasonable risk of harm: (1) the curve and contours of the road, (2) the failure to warn motorists of the placement of the pole to the street, (3) the utility company's notice of prior accidents at the location, and (4) the existence of alternative, less dangerous locations for the pole. Id. This court reversed the trial court's summary judgment decision, noting that "[t]he greatest distinction between the Armand case and the present one is that Joni Armand had the opportunity to present her case before a jury at trial." Id. at 519.
Entergy and BellSouth argue that the Vigreaux court would have upheld the trial court's summary judgment ruling had the case been decided after the 1996 and 1997 amendments to Code of Civil Procedure article 966. We disagree. Rarely have Louisiana appellate courts upheld summary judgment decisions determining unreasonable risk of harm issues. Even the Louisiana Supreme Court has noted that questions of liability under an unreasonable risk of harm claim are better left to the jury or trier of fact after a trial on the merits. See Tillman v. Johnson, 92-C-3277 (La.2/5/93), 612 So.2d 70 (reversing summary judgment in favor of the plaintiff). The court held that the question of whether lead-based paint on the defendant's properties posed an unreasonable risk of harm "is a disputed issue of mixed *460 fact and law or policy that is peculiarly a question for the jury or trier of facts."
This tenet has been upheld even after the legislature amended Code of Civil Procedure article 966. In the recent case of Reed v. Wal-Mart Stores, Inc., 97-C-1174 (La.3/4/98), 708 So.2d 362, the Louisiana Supreme Court held that appellate courts should review findings of an unreasonable risk of harm under a manifest error standard. Although the court did not review a summary judgment decision, the court did note as follows:
an appellate court, reviewing a cold record, is not in the best position to weigh and evaluate the evidence presented and make this determination. Rather, the original fact finder, viewing live testimony and evidence, is best positioned to make a determination so heavily laden with factual issues.

Id. at 364 (emphasis added).
Moreover, the few occasions in which this court has upheld summary judgments in favor of defendants on unreasonable risk of harm issues concerned situations in which no duty was owed to the plaintiff as a matter or law or cases in which the plaintiff provided no evidence to support his or her claim. See, e.g., Richter v. Provence Royal Street, 97-CA-0297 (La.App. 4 Cir. 10/8/97), 700 So.2d 1180 (granting summary judgment because defendant owed no duty to plaintiff); Robinson v. Yousuf, 95-1476 (La.App. 4 Cir. 1/19/96), 668 So.2d 436, writ denied, 96-0430 (La.3/29/96), 670 So.2d 1232 (granting summary judgment in favor of the defendant because plaintiff failed to provide evidence of prior crimes at the location and failed to show that the gas station owner owed a duty to protect the plaintiff from drive-by shootings); Bell v. State Farm Fire and Casualty, (La.App. 4 Cir. 5/5/94), 643 So.2d 1262, writ denied, 94-1433 (La.9/23/94), 642 So.2d 1289, (granting summary judgment in favor of defendant where plaintiff failed to present any evidence that a dog that was neither growling nor barking and that was fenced within the defendant's yard presented an unreasonable risk of harm where the plaintiff had injured himself when he walked backward into a gate after seeing the dog emerge from under the house); State Farm Mutual Auto. Ins. Co. v. Simon, 598 So.2d 1255 (La.App. 4 Cir.), writ denied, 604 So.2d 970 (La.1992) (reversing the trial court and granting summary judgment in favor of plaintiff, finding that a runaway horse that trampled plaintiff's parked car posed an unreasonable risk of harm to anyone and any automobile in his path).
Entergy and BellSouth do not argue here that they owed no duty to place their pole in a location that would not pose an unreasonable risk of harm to drivers and passengers like Mr. Godfrey. Instead, Entergy and BellSouth claim that summary judgment was proper in this case because Mr. Price's negligent handling of the vehicle was the sole cause of the accident and of Mr. Godfrey's resulting injuries. However, in Boteler, we found the defendant liable even though the driver's negligence may have been involved and no or little evidence of prior accidents was presented. Here, Mr. Godfrey has presented supporting documentation evidencing the poor condition of the roadway, the possibility of relocating the pole, and especially the possibility that Mr. Godfrey's injuries may have been less severe if the pole had been placed elsewhere. Therefore, we find that Mr. Godfrey has "produce[d] factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." La. C.C.P. art. 966(C)(2). For these reasons, we reverse the summary judgment ruling and remand back to the trial court.
REVERSED AND REMANDED.
NOTES
[1] Mr. Godfrey also argues that Judge DiRosa, the trial judge who granted summary judgment in favor of the defendant, was biased in this matter because an attorney for one of the defendants had previously represented Judge DiRosa in a separate matter. Mr. Godfrey filed a Motion to Recuse Judge DiRosa, which was denied by Judge Ganucheau, another Civil District Court judge; Mr. Godfrey argues that Judge DiRosa's bias was strengthened after that motion was filed and denied. However, we pretermit discussion of whether Judge Ganucheau's failure to recuse Judge DiRosa resulted in Judge DiRosa's unfairly granting the motion for summary judgment filed by Entergy and BellSouth in this case, for two reasons: (1) we review a motion for summary judgment de novo, and (2) Judge DiRosa has retired from the bench and will not hear this case on remand. Moreover, this appeal does not concern Judge Ganucheau's decision outside of its potential influence on the summary judgment ruling at issue. Therefore, we do not express an opinion as to whether Judge DiRosa should have been recused from this case.