## TURNING WATER FROM A ROAD UPON ADJACENT LANDS.

Common Pleas Court of Licking County.

FRANK MEYERS v. FRANK VERMILLION ET AL, TRUSTEES OF HOPEWELL TOWNSHIP.

Decided, September Term, 1907.

*Township Trustees—Collection of Water by, in a Highway Ditch—No Authority to Throw the Water upon Adjacent Land, When—Rights of Owners of Servient Estates—Public Necessity—Eminent Domain —Natural Easements.*

Where township trustees collect more water in the ditch bordering a highway than would naturally flow there, they must provide for its disposition in a manner which will not work an injury to the adjacent land owner; and where it is necessary to cut through the highway and throw the water upon the lower land on the opposite side, they must first acquire the right so to do by eminent domain or by otherwise compensating the land owner for the damages he will thereby sustain.

*Norpell & Norpell,* for plaintiff.
*J. M. Swartz* and *Kibler & Montgomery,* for defendants.

SEWARD, J. (orally).

This is a suit brought by Frank Meyers to obtain an order restraining the township trustees and the person in charge of the road from cutting an embankment on the west side of the Black Hand road, north of where it intersects the Newark & Zanesville road, and from permitting the water, which collects on the west side of the road, as he says, from entering a swamp or depression in his ground and injuring it for farming purposes.

There was considerable testimony taken and the witnesses are not in entire agreement. According to the view that is taken by the court, the topography of the land there indicates that the water, if not interfered with, would pass northerly from the land in controversy to the west, at least from the center of the road, and probably a portion on the east side of the road. A little south of that, the surface water, if left unimpeded, would flow a little to the southwest. At the southeast corner of Meyer's land there is a depression in the ground—rather a swampy place—where the water collects, and there is no way of getting it out except by tiling it to the southwest corner of his farm, where there is a culvert under the road entering Brushy Fork creek. This road intersects the Zanesville & Newark road. The water collects on each side of this road. North of the house of Meyers is a culvert which conducts the water from the west to the east side of the road, from which point it follows the road down to the intersection of the Newark & Zanesville road. South of that culvert, and north of Meyers' house—a distance of about 1,700 feet as I recollect it—the water collects along the side of the road by reason of the township trustees or the persons in charge of the road having worked it and thrown it up, and used a scraper or road-grader; it collects along the side of the road, and is sent southward to the point where it intersects the Newark & Zanesville road. That has been the case for substantially thirty or thirty-five years. I think the testimony shows that, although two witnesses claim that it was not that way two years ago; but from the testimony the court concluded that that condition of affairs has existed there thirty or thirty-five years, if not longer. Formerly there was a culvert under the Black Hand

road, where it intersects the Newark & Zanesville road, which took that water across to the west side of the road, and from there it was conducted two or three hundred feet to a culvert going across to and under the Newark & Zanesville road to a ditch through McCracken's land to the Brushy Fork creek.

It is claimed that there is sufficient fall from the west side from the Black Hand road, where it intersects the Newark & Zanesville road, to take this water to a culvert about 1,100 feet west of where the intersection of these two roads takes place; and there to precipitate it out into Brushy Fork creek. I think the testimony tends to show that there is a sufficient fall, if the ditch is made and kept open, to take the water to that point— about 1,100 feet—without very much expense; and it is quite certain that there is sufficient fall on the east side of where the road intersects the Newark & Zanesville road to take the water that collects on the east side of the road, running south, and the water that is sent through the culvert, if one is built to the intersection of the culvert under the road which goes through McCracken's land, and from there to Brushy Fork creek; or to take it to the Brushy Fork creek along the road. I think that could be done. It is quite certain that this water that is precipitated into this depression in McCracken's land does not get out of there except by evaporation.

The questions of law involved in this case are as to the rights of the owners of the dominant estate to have the water pass on to the servient estate, and whether it is necessary for the servient estate to take care of the water.

The court is satisfied that this water north of the house of Meyer, if left unimpeded, will pass in a southwesterly direction, and probably then enter into a spring drain and go from there to this culvert, which is 1,100 feet west of the intersection of the road.

Have the township trustees the right to collect the water and precipitate it upon the land of the plaintiff where it would enter into this depression? There is testimony tending to show that, in a dry season this land has been farmed and that a good crop of corn has been raised there; that it is farmed around the rim of the basin.

Have the township trustees the right to cut the embankment which lies west of the road and let the water in that will flow down and upon the land of the plaintiff? Have they the right to do that in the improvement of the road? They undoubtedly have the right to improve the road and to make this ditch; but, have they a right to go into this man's land and cut a ditch in three places in this embankment, and precipitate the increased flow of water during the rainy season into this basin upon his land? It is claimed that no water goes there except the water that falls on the west side of the road. But if that water would naturally flow in a thin sheet over his land, hasn't he a right to have it go there? Have the trustees, after the water had been going down that road for a number of years, the right to go onto the road and cut these places at three different points in that ditch and precipitate water into this depression?

The plaintiff cites the 108 Northwestern, page 108, which is a highway case. The court will refer to these cases briefly.

"A servient estate is bound to take the natural flow of surface water; the owner of the dominant one can not collect it and pass it onto the lower proprietor in a different manner from which it flows by nature, nor may he materially increase the quantity thereof to the injury of the lower land."

On the same page the court in reasoning out the case, say:

"It is the law of this jurisdiction that, while the servient estate is bound to take the natural flow of surface water the owner of the dominant one can not collect it and cast it upon the lower proprietor in a different manner than it flowed by nature, nor may he materially increase the quantity thereof to the injury of the lower land."

In the 25 Northeastern, page 689, *Young* v. *Commissioners of Highways,* is a case involving the power of the commissioners of highways. At page 689 the court say:

"The commissioners of highways have not the right in draining a road to collect and carry along the road a quantity of water which would naturally drain off in another direction, and discharge such accumulated water on an adjoining farm."

At page 693, the court, in reasoning out the case, say:

"The commissioners of highways, where they undertake to drain a public highway, possess the same right, and are to be governed by the same rules, as adjoining land-owners who may undertake to drain their land, except where they may proceed under eminent domain laws of the state. In *Peck v. Herrington*, 109 Ill., 611, we had occasion to consider the rights and duties of adjoining land-owners, and the rules that should govern them in draining their land; and, among other things, it was held that the owner of the dominant heritage or higher tract of land has the right to have the surface water, falling or coming naturally upon his premises, pass off the same through the natural drain upon and over the lower of servient land; and the owner of the dominant heritage, by ditches or drains, may drain his own into the natural and usual channel, even if the quantity of water thrown upon the servient heritage is thereby increased."

There is quite a lengthy discussion of the matter here but the court will not refer to it further. The 30 Northeastern Rep., page 896, has reference to townships conducting surface water:

"A township can not collect, in artificial ditches along the road, surface water which naturally flows away from the road, and by a culvert conduct it all onto one side of the road, thereby causing it to be thrown on the land of a property owner on that side."

In the 100 Northwestern Rep., page 66:

"Where, prior to the construction of certain ditches on defendant's land and across a certain highway, surface water flowed from thence over plaintiff's land in a thin sheet, but the inevitable effect of the construction of such ditches was to collect the water and discharge the same on plaintiff's land so that quantities of earth and sand were carried down and so deposited as to depreciate the usefulness of plaintiff's land for farming purposes, defendant was liable for the damages so caused."

The court say, at page 67:

"If it be not correct that more water was thus brought to and discharged upon the plaintiff's land, it is at least very clear that the water that naturally would have spread over the bottom and upon the land of plaintiff's and defendant in a broad and comparatively thin sheet, was collected and discharged in a different manner, and with different results, than would have followed had natural processes not been interfered with."

The defendants cite a number of cases, among which is *Law et al* v. *Leighty,* 1 C. C.—N. S., 431. This case announces the principle that township trustees have authority over the township road. There can be no question about that proposition—that the county commissioners are without authority to maintain suit in injunction to restrain a person from obstructing or shutting up a township road. The first proposition will not be questioned. The second proposition has no bearing upon the questions involved in this case.

Elliott on Roads, Section 464, says that there can be no doubt as to the right to use suburban roads for the drainage of connecting highways.

Section 465 treats of the effect of a grant for road purposes or seizure for road purposes, under eminent domain. That is, that the grant or seizure carries with it the authority of those whose duty it is to prepare and so maintain it that it may be safely used for public travel.

The author says:

"It is held in strongly reasoned cases that the officers may prepare and maintain the road without incurring liabilities for casting surface waters upon adjoining land, provided they are not negligent and do not collect it in a body and thus pour it upon the lands."

Elliott on Roads, Section 467, says:

"Where public necessity requires it, they may divert the flow of the water into a natural stream; but in doing this, they must not unnecessarily interfere with the rights of others. The right which a riparian proprietor possesses can not substantially be impaired, but a diversion which does not materially injure may be made when the highway officers deem it necessary."

In 5 Nisi Prius, 271, is a case where the plaintiff, the owner of the lower ground, sought to enjoin the defendant from flowing water through a culvert under the road, from the west side to the east side of the road, and through a tile over the plaintiff's land. This culvert and this tile existed for more than thirty years. It was held that the owner of the upper parcel of land has a natural easement upon a lower adjacent parcel, to the

extent of the natural flow of the surface water from the upper to and upon the lower, and may, for the benefit he may derive from the use of it for agricultural purposes, accelerate the flow of such surface water by artificial drains. That is, he collected the water, and took it to the culvert and it was passed through the tile ditch of the servient estate. It is held that he had a right to collect the surface water for agricultural purposes, to benefit his land for agricultural purposes, and precipitate it through the culvert and through the tile ditch.

So the court is satisfied in this case that more water had been collected in this ditch, along the west side of the highway, than would naturally flow there; that the township trustees, if they take it to the intersection of these two roads, must take care of it at that point; that they have no right to cut this embankment which protects the plaintiff's land from the water which flows down that road, and which has been collected by virtue of the working of the road, or the ditch that has been made along the side of the road—that they have no right to precipitate that water upon the plaintiff's land. They would have a right to do that under the law of eminent domain, but they must compensate the person who is damaged thereby; they have no right to precipitate water upon his land which would tend to damage him. The court thinks that they can take care of this water at this intersection.

I know it is said by counsel that the court ought to go there and see the land; but both surveyors have testified that there is a sufficient fall either way to take care of this water that comes down to the intersection of those two roads.

The court is cited to Section 4716, which would seem to give the trustees the right to enter upon the land and make such drains as they may deem wise. But said section in so far as it attempts to confer such authority is in conflict with the Constitution.

The injunction may be made perpetual, and notice of appeal. Bond in the sum of $50.