JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Lorri Turner, appeals from the decision of the Cuyahoga County Court of Common Pleas that granted summary judgment in favor of defendants-appellees, Ohio Bell Telephone Company and South Central Power Company. For the reasons stated below, we affirm in part, reverse in part and remand the matter for further proceedings.
 {¶ 2} The facts of this case are undisputed and were succinctly set forth by the trial court as follows:
 {¶ 3} "In the early morning of September 10, 2003, while traveling southbound on State Route 188 in Pleasant Township, Ohio, a Ford Mustang driven by Mr. Bryan Hittle was involved in an automobile accident. Mr. Robert Turner was a passenger inside Mr. Hittle's vehicle, as the two were commuting to work together that morning. At the time of the accident, because of fog and poor visibility, Mr. Hittle could not see clearly the center and edge lines of the road. Instead, he followed the taillights of the pick-up truck immediately in front of his vehicle. While trailing the truck around a curve in the road, Mr. Hittle drove his Mustang off the highway, striking a utility pole. The utility pole was located in a grassy area three feet, nine inches from the highway's edge line and two feet, five inches from the road's berm. Mr. Turner died as a result of the accident. Mr. Hittle was later convicted of vehicular manslaughter.
 {¶ 4} "On February 22, 2005, Plaintiff Lorri Turner, individually and as administrator of the estate of Robert Turner, instituted this action against Defendants The Ohio Bell Telephone Company, d/b/a SBC Ohio, and South Central Power Company. Plaintiff's Complaint alleges that Defendants were negligent in placing, maintaining and utilizing the utility pole `in such close proximity to the traveled portion of State Route 188.' The Complaint further asserts a claim of negligence per se, stating that `the presence of the utility pole in such close proximity to the traveled portion of State Route 188' violated Ohio Revised Code § 4931.01. Lastly, Plaintiff's Complaint alleges, `the presence of the utility pole in such close proximity to the traveled portion of State Route 188 constituted an absolute and/or qualified nuisance.' Both Defendants have moved for summary judgment on all claims."
 {¶ 5} In ruling on the motions for summary judgment, the trial court declined to apply the doctrine of negligence per se without further specifics in R.C. 4931.01, such as where a utility pole should be positioned. With respect to the negligence claim, the trial court found that the placement of the pole in this case did not incommode the public in its proper use of the traveled portion of State Route 188. Additionally, the trial court stated that "the record demonstrates that the pole was neither placed on the traveled and improved portion of the road nor in such close proximity as to constitute an obstruction dangerous to anyone properly using the highway." Consequently, the trial court concluded that Turner could not demonstrate a breach of the duty of care. Finally, the trial court found that the qualified and/or absolute immunity claim failed. The trial court granted the motions for summary judgment.
 {¶ 6} Turner has appealed the trial court's decision and has raised one assignment of error for our review that provides:
 {¶ 7} "I. The trial court erred in granting defendant-appellees' motions for summary judgment."
 {¶ 8} This court reviews a trial court's grant of summary judgment de novo. Ekstrom v. Cuyahoga County Comm. College,150 Ohio App.3d 169, 2002-Ohio-6228. Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex rel. Dussell v. Lakewood Police Depart.,99 Ohio St.3d 299, 300-301, 2003-Ohio-3652, citing State ex rel.Duganitz v. Ohio Adult Parole Auth., 77 Ohio St.3d 190, 191,1996-Ohio-326.
 {¶ 9} Turner argues that the issue of whether the utility pole in question "incommodes" the public's use of the roadway and/or constitutes a nuisance presents an issue of fact that cannot be resolved on summary judgment. Turner also claims that the question as to whether the utility pole was a proximate cause of Robert Turner's death is a factual issue for the jury to determine. Under the circumstances of this case, we agree with Turner.
 {¶ 10} Public utility companies enjoy the right to place and maintain utility lines and poles within the right of way for public roads; however, in doing so they must not unnecessarily or unreasonably interfere with or obstruct the public in the reasonable and ordinary use of the road for the purpose of public travel. Curry v. The Ohio Power Co. (Feb. 14, 1980), Licking App. No. CA-2671. As explained in Curry, a utility company that decides to maintain a pole within the right of way has "`the duty of seeing that its poles are so placed that they will not unreasonably or unnecessarily interfere with, obstruct or endanger the public travel upon such road. * * * In placing a particular pole within the limits of a public road, the company is bound to consider the condition of the road at that point, its direction, its curvature, if any, its width, its grade, its slope, the position of its side drains or ditches, if any, and in view of all the facts to so locate the pole as not to unnecessarily or unreasonably interfere with or obstruct the public in the reasonable and ordinary use of the road for the purpose of public travel.'" Id., quoting Martin Monahan v. TheMiami Telephone Co. (1899), 7 Ohio N.P. 95, 96.
 {¶ 11} Likewise, the Ohio Supreme Court has recognized that the superior right of the traveling public must not be prejudiced by the placement of utility poles within the right of way. InThe Cambridge Home Telephone Co. v. Harrington (1933),127 Ohio St. 1, 5, the court stated as follows:
"The traveling public has the right to the use of the highway to the entire width of the right of way as against all other persons using such highway for purposes other than travel, except those upon whom devolves the legal duty to maintain and repair such highway.
"The highway is primarily constructed for purposes of travel, and not as a site for monuments, billboards, telephone or telegraph poles, or any other device that may create an obstruction within the limits of the right of way. * * * The last clause [of the applicable law], `but shall not incommode the public in the use thereof,' is a danger signal to public utilities using the highways for their own private purposes. They are placed upon notice, to the effect that if they erect `posts, piers, and/or abutments' within the right of way of the highway, they must not prejudice the superior rights of the traveling public in so doing."
 {¶ 12} In considering whether a utility pole located within the right of way unnecessarily or unreasonably interferes with or obstructs the traveling public in the reasonable and ordinary use of the road, it is generally accepted that "a company lawfully maintaining poles near a public highway will not be held liable for the damages resulting from a vehicle striking such a pole unless it is located in the traveled portion of the highway orin such close proximity thereto as to constitute an obstruction dangerous to anyone properly using the highway." Id. (emphasis added). There is no requirement, as appellees suggest, that a pole must be located on the traveled and improved portion of the highway in order for liability to be imposed. As long as the pole is within the right of way and in such close proximity to the road as to create an unreasonable danger to the traveling public, liability may exist.
 {¶ 13} In reaching its decision in this case, the trial court relied on a number of cases that involved a pole located at least ten feet from the edge of the roadway. See Niederbach v. DaytonPower Light Co. (1994), 94 Ohio App.3d 334 (utility pole was sixteen feet off the traveled portion of the roadway); Jocek v.GTE North (Sep. 27, 1995), Summit App. No. 17097 (pole located no less than eleven feet from the improved portion of the roadway); Curry v. Ohio Power Co. (Feb. 14, 1980), Licking App. No. CA-2671 (pole located more than twelve feet from the berm). These cases are distinguishable from the present case, where the pole was located only three feet nine inches from the edge line of the road, and two feet five inches from the berm.
 {¶ 14} In Harrington, 127 Ohio St. 1, the accident victim, who was a passenger, was injured when her sister was driving around a curve and crashed into a pole maintained by a telephone company. The pole was within eleven inches of the macadam surface of the road. Id. Under those circumstances, the Ohio Supreme Court affirmed a decision to uphold a jury verdict in favor of the accident victim. Id.
 {¶ 15} In The Ohio Bell Telephone Co. v. Lung (1935),129 Ohio St. 505, the Ohio Supreme Court affirmed a judgment against a telephone company that was found guilty of negligence by placing a telephone pole on an improved portion of the right of way, 5.1 feet from the brick pavement. Under these circumstances, the court held that it was a question of fact for the jury to determine whether the pole was where it would incommode the traveling public, and, if so, whether the telephone company was guilty of negligence in placing and maintaining the pole in that location. Id. at 509.
 {¶ 16} In this case, South Central argues that unlikeHarrington and Lung, the utility pole was located outside the traveled and improved portion of the road. South Central claims that it can never be liable when a driver strikes a utility pole outside the traveled and improved portion of the road, even where the pole is relatively close to the road. As already indicated, we do not agree that the law creates such a stringent rule. Indeed, the relevant inquiry is whether the pole is in suchclose proximity to the road as to constitute an obstruction dangerous to anyone properly using the highway. Curry, supra. There is no requirement that the pole must be on an improved portion of the road for liability to be imposed.
 {¶ 17} Indeed, numerous other jurisdictions have found that liability may be imposed where the placement of a pole in close proximity to the edge of a roadway constitutes a foreseeable and unreasonable risk of harm to users of the roadway. Boteler v.Rivera (LA App. 1997), 700 So.2d 913 (finding location of utility pole three feet, and less than a car's width, from the road's edge poses an unreasonable risk of harm to users of the road); Vigreaux v. Louisiana Dept. of Transp. and Development
(La.App. 1988), 535 So.2d 518 (finding summary judgment improper where pole was located eight inches from the street and near a curve in the road); Scheel v. Tremblay (Pa.Super. 1973), 312 A.2d 45 (reversing summary judgment upon finding question of whether placement of pole close to the edge of a highway and near a curve constituted an unreasonable risk of harm to users of the road); Kentucky Utilities Co. v. Sapp's Adm'r (KY App. 1933),60 S.W.2d 976 (determining it was for the jury to decide whether the utility negligently placed its pole against or so close to the road as to make it dangerous or unsafe for the traveling public); see, also, Blackmer v. Cookson Hills Electric Coop.,Inc. (OK App. 2000), 18 P.3d 381 (recognizing a utility company may be held liable if it maintains a utility pole so near the highway as to interfere with or obstruct the ordinary use thereof).
 {¶ 18} In cases such as this, the conditions of the highway are critical in determining whether the location of the pole adjacent thereto constitutes an unreasonable risk of harm to users of the road. See Vigreaux, 535 So.2d at 519; Scheel,
312 A.2d at 47. Factors which may be considered include, but are not limited to, the narrowness and general contours of the road, the presence of sharp curves in the road, the illumination of the pole, any warning signs of the placement of the pole, the presence or absence of reflective markers, the proximity of the pole to the highway, whether the utility company had notice of previous accidents at the location of the pole and the availability of less dangerous locations. Vigreaux,535 So.2d at 519-520; Scheel, 312 A.2d at 47.
 {¶ 19} In this case, the accident occurred while Bryan Hittle and Robert Turner were commuting to work and using the highway in the ordinary course of travel. Evidence was presented of the following: the pole was less than three feet from the berm of the road; a portion of Bryan Hittle's vehicle was still located on an improved portion of the road at impact; the berm of the road was composed of loose gravel and sloped steeply away from the roadway; the pole was located along a left-bearing curve in the road; there had been previous crashes along this section of the roadway involving a utility pole or fixed object; a nearby property owner was aware of at least six collisions involving this particular pole occurring during 2002-2003; and it was feasible to move the pole farther back from the improved portion of the roadway.
 {¶ 20} Under the circumstances of this case, we find that it is for the jury to decide whether the appellees placed or maintained the pole so close to the road as to create an unreasonable risk of harm for the traveling public; whether it was foreseeable that a car would veer off the road and strike the pole, causing injury to a passenger; and whether the negligent placement of the pole, if any, was a proximate cause of the injury.
 {¶ 21} Nonetheless, Ohio Bell argues that the sole, proximate cause of Robert Turner's death was Bryan Hittle's negligent driving. Proximate cause is a question for the jury, not the court. Lung, 129 Ohio St. at 510. Further, the fact that the driver of the vehicle that struck the pole may have been negligent does not relieve a utility company from liability for its own negligence. Indeed, a jury could find that a utility company's negligence in the placement of a pole proximately caused the harm where but for the placement of the pole, the accident and resulting injury could have been avoided. As stated in Lung, 129 Ohio St. at 510:
"If Kreiger, the driver of the car, was guilty of negligence in running into the pole and the telephone company was guilty of negligence in maintaining the pole where it was, that is, if the negligence of both together was the proximate cause of the death of plaintiff's decedent, actionable negligence on the part of the telephone company would exist; and, again, if the negligence of the telephone company was a proximate cause of the death of plaintiff's decedent, the fact that some other cause for which neither party to the action was to blame proximately contributed to the harm would not avail to relieve the telephone company from liability. * * * [T]he question whether the negligence of the telephone company, if any, in placing and maintaining the pole where it was, was a proximate cause of the fatalities, was one of fact for the jury."
See, also, Harrington, 127 Ohio St. at 5-6 (finding no error in jury charge indicating that negligence of driver and utility company could be concurrent); Kentucky Utilities,60 S.W.2d at 981 (finding utility company was not relieved of liability if, as a matter of fact, the injury would not have resulted but for the negligent obstruction of the road); Blackmer, 18 P.3d at 385
(finding negligence of driver and of utility company could be concurrent proximate causes of the accident for which both could be held liable); Boteler, 700 So.2d at 920 (apportioning liability between driver and utility company). In this case, an issue of fact was presented as to whether the utility companies' negligence, if any, was a proximate and concurrent cause of Turner's death.
 {¶ 22} Insofar as appellees claim that they cannot be held liable since they did not originally place the pole, we find no merit to this argument, as an issue of fact remains as to whether they maintained the pole. Further, the appellees themselves each claim the other is responsible for the pole.
 {¶ 23} For the reasons stated herein, we find the trial court improperly granted summary judgment on the negligence claim. We also find the trial court improperly granted summary judgment on the qualified nuisance claim. "A qualified nuisance is essentially a tort of negligent maintenance of a condition that creates an unreasonable risk of harm, ultimately resulting in injury." State ex rel. R.T.G., Inc. v. State, 98 Ohio St.3d 1,13, 2002-Ohio-6716; see, also, Metzger v. Pennsylvania, O. D.R. Co., 146 Ohio St. 406, at paragraph two of the syllabus (stating a qualified nuisance "consists of an act lawfully but so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another"). We find that issues of fact have been presented in this case as to whether maintaining the utility pole in its location at the point of the accident constituted a qualified nuisance.
 {¶ 24} However, we find summary judgment was properly granted on the claims for absolute nuisance and negligence per se. The facts of this case do not support an absolute nuisance claim. The Ohio Supreme Court has stated, "[a]n absolute nuisance is based on either intentional conduct or an abnormally dangerous condition that cannot be maintained without injury to property, no matter what care is taken." State ex rel. R.T.G., Inc.,90 Ohio St.3d at 13. Here, there is no evidence that the placement or maintenance of a utility pole within a right of way is so abnormally dangerous that it cannot ever be performed safely.[1]
 {¶ 25} Turner's negligence per se claim is based on R.C.4931.01, a statute that was repealed in 1999.[2] That statute included a duty that a utility company constructing posts along public roads do so in a manner "not to incommode the public in the use of the roads or highways." Because the duty "not to incommode the public" is a general, abstract description of a duty, negligence per se has no application, and the elements of negligence must be proved in order to prevail. See Sikora v.Wenzel, 88 Ohio St.3d 493, 395, 2000-Ohio-406; Mussivand v.David (1989), 45 Ohio St.3d 314, 319.
 {¶ 26} Turner's sole assignment of error is sustained in part and overruled in part. We affirm on the claims of negligence per se and absolute nuisance. We reverse on the claims of negligence and qualified nuisance.
 {¶ 27} This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellees share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and McMonagle, J., Concur.
[1] The Ohio Supreme Court has also stated that an absolute nuisance "consists of either a culpable and intentional act resulting in harm, or an act involving culpable and unlawful conduct causing unintentional harm, or a nonculpable act resulting in accidental harm, for which, because of the hazards involved, absolute liability attaches notwithstanding the absence of fault." Metzger, 146 Ohio St. 406, at paragraph one of the syllabus. Here again, we do not find the facts of this case support a claim for absolute nuisance.
[2] But, see, R.C. 4931.03, containing similar language.