DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Vicki Swaisgood, appeals from a decision by the Erie County Court of Common Pleas granting summary judgment in favor of appellee, Verizon North, Inc. For the reasons that follow, we reverse the decision of the trial court.
 {¶ 2} The facts of this case are clear and undisputed. This case arises out of an accident that occurred on April 20, 2002, and began when an unknown tractor-trailer that was heading north on C.R. 1575 made a right-hand turn onto Route 250 and struck a divided highway sign and a Verizon utility pole located on the southeast corner of the intersection. The pole in question, which Verizon identifies as "2007-1", was in a grassy area, three feet, nine inches from the paved portion of the road. Attached to the pole, at a height of between 18 and 21 feet, was Verizon's telephone line, which crossed Route 250 and was attached to another Verizon pole located on the north side of Route 250. The telephone line ran above the wires for the traffic signals at the intersection of C.R. 1575 and Route 250.
 {¶ 3} After the pole was struck by the unidentified tractor-trailer, a box track driven by Larry Fisher approached the intersection from the west, headed eastbound on Route 250. As Fisher attempted to go through the intersection, the box track became entangled in the low-hanging wires, pulling them even lower.
 {¶ 4} Mick Swaisgood and appellant's husband, Myron Swaisgood, were the next upon the scene, traveling in a Suburban motor vehicle that was pulling a trailer. Mick was the driver of the vehicle, and Myron was his passenger. Like Fisher, they were headed eastbound on Route 250. On reaching the intersection, they pulled up to the right of the box track and stopped, unable to proceed any further.
 {¶ 5} Terry Hamilton, a lieutenant for the Ashland County Sheriffs Department, was the next to arrive, and came upon the box track and the Swaisgood vehicle. The box track was in the inside, or passing, lane with its four-way flashers on. The Swaisgood vehicle was in the outside or right-hand lane, also with its four-way flashers on. Hamilton noticed a traffic light sitting on top of the box track. Almost immediately after Hamilton stopped his cruiser, Myron approached the passenger side of the vehicle and told Hamilton that a track had come out of the track stop and clipped a pole, and that, as a result, some wires were handing low. He further stated that he was trying to direct his brother's vehicle around the problem area. At that point, a tractor-trailer driven by Weldon Puder entered the intersection, traveling westbound on Route 250. The vehicle became entangled in the low-hanging wires, causing the cables and traffic light to fall, and the debris to become airborne. Myron was struck with the debris and was found lying in a ditch. He died 18 days later, as a result of his injuries.
 {¶ 6} On June 11, 2003, appellant, individually and as executrix of the estate of Myron Swaisgood, filed a complaint against, among others, appellee, Verizon, for negligence and nuisance with respect to the location of the utility pole. Thereafter, appellant filed a motion to amend her complaint, adding a claim of willful and wanton misconduct of Verizon. On March 23, 2004, Verizon filed a motion for summary judgment. The trial court granted this motion in a judgment entry file stamped April 14, 2006. On May 14, 2006, appellant timely appealed the judgment, raising the following assignments of error:
 {¶ 7} I. "SINCE A QUESTION OF FACT EXISTS AS TO WHETHER THE VERIZON POLE IN QUESTION (2007-1) WAS LOCATED WITHIN THE TRAVELED PORTION OF THE ROADWAY OR IN CLOSE PROXIMITY THERETO, THE TRIAL COURT ERRED IN GRANTING DEFENDANT VERIZON'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 8} II. "SINCE A QUESTION OF FACT EXISTED AS TO WHETHER DEFENDANT VERIZON FAILED TO EXERCISE REASONABLE CARE IN POLE LINE DESIGN AND POLE PLACEMENT IN ACCORDANCE WITH GENERALLY ACCEPTED ENGINEERING PRINCIPLES, THE TRIAL COURT ERRED IN GRANTING DEFENDANT VERIZON'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 9} III. "THE TRIAL COURT ERRED IN GRANTING VERIZON'S MOTION FOR SUMMARY JUDGMENT EVEN THOUGH A QUESTION OF FACT EXISTS AS TO WHETHER VERIZON VIOLATED THE TERMS OF ITS 1989 PERMIT APPLICATION AND THE TERMS OF THE PERMIT COVERING THE PLACEMENT OF THE POLE IN QUESTION (2007-1). VERIZON ASSUMED BY AGREEMENT LIABILITY FOR VIOLATIONS OF THE TERMS OF THE PERMIT."
 {¶ 10} IV. "A QUESTION OF FACT EXISTED AS TO WHETHER DEFENDANT VERIZON'S CONDUCT WAS WILLFUL AND WANTON GIVEN VERIZON'S FAILURE TO TAKE ANY CORRECTIVE ACTION WHATSOEVER IN SPITE OF PRIOR SIMILAR INCIDENTS, GENERALLY ACCEPTED ENGINEERING PRINCIPLES, AND AN EMPLOYEE'S WARNING TO HIS SUPERVISOR THAT THE PLACEMENT OF THE POLE CREATED A SERIOUS HAZARD TO THE MOTORING PUBLIC. THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S CLAIM FOR COMPENSATORY AND PUNITIVE DAMAGES ARISING FROM VERIZON'S WILLFUL AND WANTON MISCONDUCT."
 {¶ 11} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Civ.R. 56(C) provides:
 {¶ 12} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as considered in this rule. * * *"
 {¶ 13} Summary judgment is proper where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party.Ryberg v. Allstate Ins. Co. (July 12, 2001), 10th Dist. No. 00AP-1243, citing Tokles Son, Inc. v. Midwestern Indemnity Co. (1992),65 Ohio St.3d 621, 629.
 {¶ 14} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the non-moving party's claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once this burden has been satisfied, the non-moving party has the burden, as set forth at Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id.
 {¶ 15} Appellant argues in her first assignment of error that there is a question of fact as to whether the Verizon pole in question was located within the traveled portion of the roadway or in close proximity thereto. She argues in her second assignment of error that there is a question of fact as to whether Verizon failed to exercise reasonable care in placing the pole. As these assignments of error both deal with aspects of appellant's negligence claim, we will consider them together in our analysis.
 {¶ 16} In order to establish a claim for negligence, a plaintiff must demonstrate: 1) the existence of a duty; 2) a breach of that duty; and 3) an injury proximately resulting therefrom. Menifee v. Ohio WeldingProd. (1984), 15 Ohio St.3d 75, 77. In this case, Verizon's duty is created by R.C. 4931.03, which deals with construction by a telegraph or telephone company in an unincorporated area of a township. R.C. 4931.03
relevantly provides:
 {¶ 17} "(A) A telegraph or telephone company may do either of the following in the unincorporated area of the township:
 {¶ 18} "(1) Construct telegraph or telephone lines upon and along any of the public roads and highways and across any waters within that area by the erection of the necessary fixtures, including posts, piers, or abutments for sustaining the cords or wires of those lines. Those linesshall be constructed so as not to incommode the public in the use of theroads or highways, or endanger or injuriously interrupt the navigationof the waters." (Emphasis added.)
 {¶ 19} Applying R.C. 4931.03 to the instant case, we find that Verizon had a duty to position utility pole 2007-1 in a location that would not incommode the public's use of the roadway. To ascertain the meaning and scope of this duty under the circumstances of the instant case, we begin with the general observation that Ohio public utility companies enjoy the right to place and maintain utility lines and poles within the right of way for public roads, but in exercising this right they must not unnecessarily or unreasonably interfere with or obstruct the public in the reasonable and ordinary use of the road for public travel.Turner v. Ohio Bell Telephone Co., 8th Dist. No. 87541, 2006-Ohio-6168, 1 10, citing Curry v. The Ohio Power Co. (Feb. 14, 1980), 5th Dist. No. CA-2671.
 {¶ 20} Factors that may be considered in determining whether a utility pole's location constitutes an unreasonable risk of harm to users of the road include, but are not limited to: 1) the narrowness and general contours of the road; 2) the presence of sharp curves in the road; 3) the illumination of the pole; 4) any warning signs of the placement of the pole; 5) the presence or absence of reflective markers; 6) the proximity of the pole to the highway; 7) whether the utility company had notice of previous accidents at the location of the pole; and 8) the availability of less dangerous locations. Id., ^ 18.
 {¶ 21} Courts considering whether a utility pole located within the right-of-way unnecessarily or unreasonably interferes with or obstructs the traveling public in the reasonable and ordinary use of the road have generally recognized that "a company lawfully maintaining poles near a public highway will not be held liable for the damages resulting from a vehicle striking such a pole unless it is located in the traveled portion of the highway or in such close proximity thereto as to constitute an obstruction dangerous to anyone properly using the highway." Curry, supra. (Emphasis added.) Contrary to appellee's suggestion, there is no requirement that a pole be located on the traveled and improved portion of the highway in order for liability to be imposed. "As long as the pole is within the right of way and in such close proximity to the road as to create an unreasonable danger to the traveling public, liability may exist." Turner, supra, at ¶ 12.
 {¶ 22} Here, the relevant chain of events began when the unknown tractor-trailer made a right-hand turn onto Route 250 and struck Verizon utility pole 2007-01. Although the pole was located some three feet, nine inches from the paved portion of the road, it was the opinion of appellant's expert, civil engineer William Berg, Ph.D., P.E., that the pole was hazardously positioned in a nonpaved, "traveled way." As stated by Dr. Berg at paragraph seven of his affidavit:
 {¶ 23} "7. In addition to the concern for the safety of motorists resulting from impacts by errant vehicles, for obvious reasons it has been national and Ohio practice to place utility poles outside the traveled portion of the roadway, or areas typically traversed by non-errant vehicles. The subject intersection is frequently used by large tracks due to the presence of a track stop in the southeast quadrant. When these large vehicles make right turns from CR 1575 onto US 250, a minimum-radius turning path which would preclude encroachment onto adjacent traffic lanes would pass immediately adjacent to the location of pole No. 2007 with no effective clearance between the track and the pole. In other words, the pole would be within the area that large vehicles would typically travel. As a consequence, to avoid striking the pole some trackers would be expected to swing wide into the opposing traffic lane of CR 1575 and/or into the inside traffic lane of eastbound US 250. Other trackers would be expected to travel on a path that would force their right-rear trailer tires to off-track onto the non-paved area and come very close to the subject pole. It would also be expected, that there would be an occasional track that would make contact with the pole during the turning maneuver. Thus, at the subject intersection, the `traveled way' as defined in AASHTO and Ohio DOT publications includes areas that are not paved even though they are regularly traversed by non-errant vehicles. The pole in question was placed within this non-paved `traveled way.'"
 {¶ 24} Other evidence reveals that prior to April 20, 2002, there had been several crashes involving the subject utility pole. At least one such accident, which occurred on October 17, 2000, was substantially similar to the accident at issue inasmuch as it resulted when a track that was headed north on CR. 1575 turned right onto Route 250. Verizon employee, lineman/senior lineman Leo Denis Blake, testified that he replaced the pole under these same circumstances approximately six to ten times before April 20, 2002.
 {¶ 25} Evidence provided by Dr. Berg established that Verizon's placement of the pole was in violation of engineering guidelines promulgated by the American Association of State Highway and Transportation Officials ("AASHTO") and the Ohio Department of Transportation. According to Dr. Berg, the pole could have been placed in a safer location, and in conformity with the stated guidelines, had it been placed further east along the Route 250 right-of-way.[1]
 {¶ 26} Under the circumstances of this case, we find that the evidence is sufficient to establish a genuine issue for trial regarding whether Verizon placed or maintained the pole so close to the road as to create an unreasonable risk of harm for the traveling public.[2] Accordingly, appellant's first and second assignments of error are found well-taken.
 {¶ 27} Appellant argues in her third assignment of error that the trial court erred in granting Verizon's motion for summary judgment, because: 1) there is a question of fact as to whether Verizon violated the terms of its 1989 permit application and the terms of the permit covering the placement of the pole; and 2) Verizon assumed by agreement liability for violations of the terms of the permit. We are not persuaded by this argument. Unfortunately for appellant, evidence of Verizon's post-accident remedial measures is inadmissible to prove negligence or culpable conduct. See Evid.R. 407.
 {¶ 28} In 1989, Mark Wojnar, on behalf of GTE (Verizon's predecessor), completed an application for a permit to place an aerial communications cable across Route 250, 20 feet east of the intersection with C.R. 1575. The Department of Transportation approved the permit application. Both the application and the utility permit provided that the telephone line was to be placed 20 feet east of the intersection. According to Dr. Berg, the location of telephone poles is always measured and referenced to the edge of the pavement or traveled way adjacent to the pole location.[3] Here, the pole was placed approximately three feet from the paved edge of the roadway, and not 20. Therefore, appellant contends, Verizon violated the terms of its 1989 permit application and the terms of the permit covering the placement of the pole.
 {¶ 29} Even assuming, arguendo, that the placement of the pole was in violation of the permit application and the permit, appellant's argument necessarily fails. Appellant does not provide — and this court's research does not reveal — any authority in support of her position that Verizon owed her or the decedent a duty under the permit. In fact, the general rule is that `"[a] plaintiff in an action for negligence, who bases his suit upon the theory of a duty owed to him by the defendant as a result of a contract must be a party or privy to the contract; otherwise he fails to establish a duty toward himself on the part of the defendant, and fails to show any wrong done to himself" Toman v.Pennsylvania RR. Co., 39 Ohio Law Abs. 32, quoting 38 Am.Jur. 662; see, also, Doe v. Choices, 2d Dist. No. 21350, 2006-Ohio-5757, | 19. Appellant did not allege that either she or the decedent was a party to the permit, and, without more, she cannot establish a duty owed to her or the decedent under that permit. Appellant's third assignment of error is therefore found not well-taken.
 {¶ 30} In her fourth, and final, assignment of error, appellant argues that the trial court erred in granting appellee's motion for summary judgment because there was a question of fact as to whether Verizon's conduct was willful and wanton, given Verizon's failure to take corrective action despite prior similar accidents, generally accepted engineering principles, and Blake's warning to his supervisor that the placement of the pole created a serious hazard to the motoring public.
 {¶ 31} The test for determining wanton misconduct has two parts, and requires a plaintiff to show: 1) that there was a failure to exercise any care whatsoever by those who owe a duty of care; and 2) that the failure occurred under circumstances in which there was a great probability that harm would result from the lack of care. Matkovich v.Perm Central Transportation Co. (1982), 69 Ohio St.2d 210, 212.
 {¶ 32} As indicated above, the October 17, 2000 incident was substantially similar to the one at hand because it involved damage to pole 2007-1 caused by a track headed north on CR 1575 and turning right, or east, on SR 250. According to affidavit testimony by lineman/senior lineman Blake, he had previously complained to his supervisors that the location of pole 2007-1 was dangerous. As he put it, "After the October 17, 2000 incident I recall a conversation I had with [supervisor and field engineer/senior field engineer] Steve Thomas in which I told him that the facilities (wires/cables) in the area around the track stop, including pole number 2007-1, needed to be buried to avoid serious injury or death. I asked Mr. Thomas — `What's it going to take, someone getting killed before corrective action will be taken?' He responded that it would cost too much to do so.'"
 {¶ 33} Steve Thomas testified at deposition that his job duty was to design, on behalf of Verizon, items that needed to be placed within the right-of-way. He further testified that it was his responsibility to safely design those items, and that this responsibility included paying attention to the safety of motorists using the roadway. In particular, Thomas stated that in designing line placement and placement of poles, he would take into consideration whether or not the pole would be struck by motor vehicles, causing injury to others using the highway. He stated that he would do this in connection with every placement of a pole that he was involved in as an engineer and senior engineer. In the case of pole 2007-01, however, he never made such an engineering evaluation until after April 2002, when Myron Swaisgood was fatally injured.
 {¶ 34} Evidence of the prior similar incident/incidents, together with the evidence that Verizon ignored its own engineering guidelines, and ignored Blake's warning to his supervisor, is sufficient to establish a question of fact as to whether Verizon failed to exercise any care whatsoever and under such circumstances that there was a great probability that harm would result from the lack of care. Appellant's fourth assignment of error is, therefore, found well-taken.
 {¶ 35} For all of the foregoing reasons, the judgment of the Erie County Court of Common Pleas is reversed, and this case is remanded for further proceedings consistent with this decision and judgment entry. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J.
Arlene Singer, J.
William J. Skow, J.
CONCUR.
[1] Although courts have held that engineering standards such as those relied on by Berg are suggestive and not mandatory, see Neiderbrach v.Dayton Power and Light Co. (1994), 94 Ohio App.3d 334, 342; Jocek v.GTENorth, Inc. (Sept. 27, 1995), 9th Dist. No. 17097, we find that they are properly considered by the trier of fact in determining whether a utility pole's location constitutes an unreasonable risk of harm to users of the road.
[2] Appellants seek to introduce in support of their claim for negligence additional evidence consisting of an e-mail sent by Verizon manager, Stephen E. Euton, to other Verizon supervisors. The e-mail provides:
"Mark and Steve. . . .I have been told by you Steve T, Brent and Davy that [the relevant] section of cable was going to be placed under the road. There was even discussion on Saturday about doing it that day, we suggested to place it temporary across the road due to the amount of time to get a crew there for a road bore.
"What is the story? Why are we even discussing not removing the poles and placing this under the road?
"Mark, how many times does this cable and poles have to be damaged? (and people get hurt)
"Hopefully, what I am hearing is a rumor and we are in the process of placing the cable under the road. Mark, please advise, thanks."
[3] Former Verizon employees Steven R. Thomas and Mark Wojnar testified that they were unaware of the precise point from which the measurement was to be made. They also stated that there was no standard practice as to whether the 20 feet measurement would be from the east side of the pavement, the middle of the roadway, or some other point.